**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James Willis SAGET, Julius Phillip Hall, Herbert Nathaniel Johnson, Lamar Roberson, Defendants–Appellants.**

**No. 91–9098.**

United States Court of Appeals, Eleventh Circuit.

May 26, 1993.

---

Jan R. Gilbert, Savannah, GA, for James W. Saget.

David Roberson, Savannah, GA, for Juluis P. Hall.

Howard E. Spiva, Savannah, GA, for Herbert N. Johnson.

Brent J. Savage, Adams, Gardner, Ellis & Inglesby, Savannah, GA, for Lamar Roberson.

Thomas A. Withers, Asst. U.S. Atty., Savannah, GA, David T. Shelledy, Thomas E. Booth, U.S. Dept. of Justice, Crim. Div., Appellate Section, Washington, DC, for U.S.

Before COX and BLACK, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

Appellants were tried and convicted by a jury on charges stemming from a fifteen-count indictment handed down by a grand jury. Appellants raise numerous issues on appeal, including insufficiency of the evidence, erroneous evidentiary rulings, and improper sentencing. We find these contentions to be without merit and AFFIRM the convictions of each appellant on all counts.

## I. BACKGROUND

A grand jury returned a fifteen-count indictment against James Willis Saget, Julius Phillip Hall, Herbert Nathaniel Johnson, Lamar Roberson and two other defendants who are not a party to this appeal. All four appellants were charged with conspiring to possess with intent to distribute cocaine base ("crack") (count 1). Hall and Johnson were charged with two counts each of travelling in interstate commerce with intent to facilitate the distribution of crack (counts 4 & 5), and with obstruction of justice (count 10). Hall, Johnson and Saget were charged with laundering the proceeds of illegal drug transactions (count 15). Johnson and Roberson were charged with multiple counts of distribution of crack. (Johnson—counts 6, 7, 8, 9, 11 & 13; Roberson—counts 11 & 12). Finally, Hall was charged with perjury before the grand jury (count 14). With the exception of the money laundering counts against Saget and Johnson, the appellants were found guilty on all counts. The district court

sentenced Hall, Johnson and Roberson to life imprisonment for the conspiracy and to at least one concurrent term of twenty years or more for the other counts on which they were convicted. Saget was sentenced to imprisonment for 330 months, to be followed by 5 years supervised release.

The grand jury indictment resulted from the investigation of a cocaine conspiracy involving the appellants. The conspiracy was set up in the form of a partnership, with preassigned ownership interests, for the purpose of obtaining quantities of crack cocaine from southern Florida and transporting them to Savannah, Georgia for further distribution. Hall was the planner and head of the partnership. Saget was responsible for transporting the cocaine from Florida to Savannah where other members of the conspiracy would divide the quantity into smaller parcels and further distribute the cocaine. Saget delivered one-half of a kilogram of cocaine at least twice a month for ten months. Johnson and Roberson were primarily responsible for selling the smaller quantities of crack. Hall and Johnson each contributed money for the initial shipment of cocaine. Thereafter, over the course of their operation, Hall wired money to Saget in Florida for drug purchases, and he traveled with Johnson to Florida to deliver money to Saget.

After a jury trial resulted in convictions for each appellant, appellants filed post-trial motions for arrest of judgment and for a new trial, which the district court denied. Appellants then filed the instant appeal.

## II. DISCUSSION

### A. MOTION FOR SEVERANCE

Roberson contends that the district court abused its discretion in denying his motion for severance due to the prejudice he suffered by association with the other defendants at trial. Pursuant to Fed. R.Crim.P. 8(b), joinder of multiple defendants is proper whenever there is a "common thread" between the actions charged

against them. *United States v. McLain,* 823 F.2d 1457, 1467 (11th Cir.1987). In conspiracy cases like this one, the general principle is well-settled that "persons who are charged together should also be tried together." *United States v. Morales,* 868 F.2d 1562, 1571 (11th Cir.1989). In evaluating a motion for severance, this court must determine whether the prejudice inherent in a joint trial outweighs the interests in judicial economy. *Id.* To establish that the district court's balancing of interests was an abuse of discretion, Roberson must "demonstrate that a joint trial resulted in specific and compelling prejudice to the conduct of his defense." *U.S. v. Lehder–Rivas,* 955 F.2d 1510, 1521 (11th Cir.1992). "Compelling prejudice" is demonstrated by a showing that the jury was unable to make an individualized determination as to each defendant. *Id.* "Convictions invariably are sustained when it may be inferred from the verdict that the jury meticulously sifted the evidence, by acquitting on particular counts indicating an individual assessment of the guilt of each defendant." *United States v. Smith,* 918 F.2d 1551, 1560 (11th Cir.1990). The district court instructed the jury "to give separate, personal consideration to the case of each individual defendant" (R10–1470), and the record confirms that the jury independently evaluated the evidence against each defendant on each count. The jury not only acquitted Cecilia Hall Strobert[1] of conspiracy, but also acquitted Johnson of money laundering while convicting him of other charges. Thus, the district court did not abuse its discretion in denying Roberson's motion for severance.

### B. MOTION FOR MISTRIAL

Roberson challenges the district court's denial of his motion for mistrial after a government witness' testimony relating to Johnson's withdrawn plea agreement. "The decision to grant a mistrial is within the discretion of the trial judge since he is in the best position to evaluate the

1. Cecilia Hall Strobert was indicted on the conspiracy count and tried with the appellants but was acquitted by the jury.

prejudicial effect of a statement or evidence on the jury." *U.S. v. Blakey*, 960 F.2d 996, 1000 (11th Cir.1992). Further, "prejudicial testimony will not mandate a mistrial when there is other significant evidence of guilt which reduces the likelihood that the otherwise improper testimony had a substantial impact on the verdict of the jury." *United States v. Anderson*, 782 F.2d 908, 916 (11th Cir.1986). At trial, Johnson took the stand and admitted selling crack on every occasion alleged in the indictment, although he denied any involvement in the conspiracy with the other defendants. Immediately after Johnson testified, his counsel called an FBI agent to the stand who revealed that Johnson had at one time agreed to a plea bargain.[2] The district court declared that the reference to a plea agreement was improper but found no need to declare a mistrial since Johnson himself had already admitted to the jury that he was guilty of six counts of the indictment. However, the court did give the jury a curative instruction to the effect that no guilty plea had been entered in this case and instructed the jurors to disregard any information to the contrary that they had heard. The terms of the plea agreement were never disclosed at trial, nor was any reference made to the other defendants with respect to plea agreements. In light of the overwhelming evidence of Roberson's guilt, we cannot say that the district court abused its discretion in denying the motion for mistrial.

## C. MOTION FOR CONTINUANCE

 Roberson contends that the district court abused its discretion in denying his motion for a continuance because the government supplied new evidence two weeks before trial was to begin. Denial of a continuance, requested by a defendant in order to permit additional preparation for trial, must be upheld unless the defendant can show an abuse of discretion and specific, substantial prejudice. *United States v. Gossett*, 877 F.2d 901, 906 (11th Cir.1989), *cert. denied*, 493 U.S. 1082, 110 S.Ct. 1141,

107 L.Ed.2d 1045 (1990). To make such a showing, Roberson must identify relevant, non-cumulative evidence that would have been presented if his request for a continuance had been granted. *See United States v. Gibbs*, 594 F.2d 125 (5th Cir.1979) (defendant unable to point to any critical document that might have been uncovered with additional time and whose absence prejudiced or impaired his defense). Roberson argues that two weeks was an insufficient amount of time to allow him to fully evaluate the voluminous amounts of new evidence and to fully prepare his case for trial. The district court found to the contrary and indicated that it was "satisfied that the government had not deliberately withheld important discovery material from the defendants, and the court is convinced that the defendants have had ample opportunity to review and analyze the discovery material and prepare adequately for the trial of this case." (Magistrate Judge's Order, October 4, 1991). The record contains nothing that would indicate a different result had the motions been granted. In the absence of any proffer of additional evidence that would have been presented by Roberson if granted a continuance, we cannot find any specific or substantial prejudice arising from the district court's denial of his motion for a continuance.

## D. *BATSON v. KENTUCKY* CHALLENGE

 Hall contends that the district court's acceptance of the government's explanation for its use of preemptory challenges is clearly erroneous. The government used four of its six preemptory challenges to strike African–American persons from the venire. The district court found that Hall had established a prima facie case of discrimination under the principles set forth in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), but then accepted the government's explanations for its use of preemptory challenges. The district court's acceptance of these ex-

---

**2.** The FBI agent testified as follows:

 **Q:** Do you recall telling Mr. Johnson that he needed to cooperate in order to help himself?

 **A:** Mr. Spiva, at that point Mr. Johnson had already entered into a plea agreement with the government.

planations "turns on an evaluation of the prosecutor's credibility" and this court must give the district court's findings "great deference." *United States v. David,* 844 F.2d 767, 769 (11th Cir.1988). Since the government articulated legitimate, race-neutral reasons for each of its preemptory challenges we cannot say that the district court's acceptance of these explanations was clearly erroneous.

### E. PROSECUTOR'S OPENING STATEMENT

 Roberson contends that he was prejudiced by the government's opening statement when the prosecutor collectively referred to Johnson and Roberson in describing evidence of cocaine sales. Since Roberson did not object to the prosecutor's statement at the time it was made or in his motion for a new trial, the allegation of error must be reviewed under a "plain error" standard. *United States v. Young,* 470 U.S. 1, 16–17, 105 S.Ct. 1038, 1046–48, 84 L.Ed.2d 1 (1985). "A prosecutor's statement will justify a reversal if it undermined the fairness of the trial and contributed to a miscarriage of justice." *United States v. Obregon,* 893 F.2d 1307, 1310 (11th Cir. 1990). In his opening remarks, the prosecutor stated "there are a number of undercover recorded buys from Herbert Nathaniel Johnson and Lamar Roberson. And you will hear five or six of those." Roberson argues that since he was only involved in one of those transactions, his right to a fair trial was unfairly prejudiced by the taint of Johnson's independent and unrelated drug transactions. However, the statement above does not attribute any specific number of wrongful acts to Roberson. Moreover, the prosecutor immediately followed that statement with a more specific clarification:

> Five of those recordings were made by a paid police informant by the name of Tammy Johnson. She makes recorded buys, that is audio recordings, from Herbert Nathaniel Johnson.
>
> And you will hear (Nathaniel) Johnson ... and Lamar Roberson negotiating the sale of crack cocaine to [a third person]....

On two occasion, you will hear Lamar Roberson attempt to sell crack cocaine to informants who have come with instructions to purchase crack cocaine from Herbert Nathaniel Johnson. (R7—114–115).

The prosecutor was reasonably specific in delineating which evidence was attributable to each defendant. In addition, the prosecutor's remarks are consistent with the evidence produced at trial. Taken in context and viewed against the opening statement in its entirety, the remarks were not such as to unfairly prejudice Roberson or result in a miscarriage of justice.

### F. EVIDENTIARY RULINGS

 A district court's evidentiary ruling must stand unless there appears a clear abuse of discretion. *United States v. Lankford,* 955 F.2d 1545, 1548 (11th Cir. 1992). Even if the district court abused its discretion by admitting or excluding evidence, the conviction must be affirmed unless the defendant can meet its burden of demonstrating that substantial rights were affected by the error. *United States v. Cameron,* 907 F.2d 1051, 1059 (11th Cir. 1990).

#### 1. *Admission of Firearm Evidence*

 Roberson argues that the district court should have excluded evidence of four weapons seized from his house at the time of his arrest because the prejudicial effect of that evidence outweighed its probative value. However, this court has held that possession of weapons is circumstantial evidence of a defendant's involvement in a cocaine conspiracy because such weapons are often "tools of illegal narcotics trafficking." *United States v. Terzado–Madruga,* 897 F.2d 1099, 1120 (11th Cir.1990). Consequently, the firearms evidence had circumstantial relevance to Roberson's involvement in the alleged conspiracy, and the district court did not abuse its discretion by admitting it.

#### 2. *Testimony of an Atheist*

 Hall moved to strike the testimony of William Earl McDonald, a government

witness, arguing that he was incompetent to testify because he swore an oath to God despite the fact that he is an atheist. It is well settled that an oath to God is no longer required in order to testify and that a witness may affirm rather than swear an oath. *See* 1 U.S.C. § 1 (1985). Fed.R.Evid. 603 requires only that a witness "declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so." Hall asserts that McDonald swore an oath because "that was what was required to be said" and therefore the oath did not impress upon McDonald the duty to tell the truth. In response to questions about his religious beliefs, McDonald testified that he took the oath seriously, that he respected the oath, and that "to the best of my ability, I'm telling the truth." McDonald was not offered a chance to affirm rather than swear an oath, but the record reflects that he was cognizant of his solemn duty to tell the truth. This comports with the liberal requirements of Rule 603 and the district court correctly denied the motion to strike McDonald's testimony.

### 3. *Limitations on Hall's Right to Cross-Examination*

▓▓▓▓ Hall contends that the district court impermissibly restricted his cross-examination of McDonald in violation of the 6th amendment.[3] At trial, Hall attempted to impeach the testimony of McDonald with prior inconsistent statements that McDonald had made to FBI agents. Hall's attorney, reading directly from the agent's summary, asked if the statement reflected what McDonald had told the agent.[4] In effect, Hall's attorney was introducing extrinsic evidence to the jury of McDonald's prior inconsistent statement via the FBI

agent's summary. "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same...." Fed.R.Evid. 613(b). The district court sustained an objection to Hall's use of a summary prepared by an FBI agent without a showing that McDonald had adopted the statements as his own. The district court's determination whether evidence is supported by a proper foundation is reviewable for an abuse of discretion. *United States v. Miller*, 771 F.2d 1219, 1233 (9th Cir.1985). Under the Jencks Act[5], non-verbatim summaries of a witness' prior oral statements are excluded from mandatory production because it would be "grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." *Palermo v. United States*, 360 U.S. 343, 350, 79 S.Ct. 1217, 1223–24, 3 L.Ed.2d 1287 (1959). For the same reasons, we conclude that a witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own. Impeachment of McDonald was not prevented by the district court. Rather, the district court merely disapproved of the method employed by defense counsel and held him to the procedural requirements of establishing the proper foundation. Later in the trial, Hall was able to effectively impeach McDonald's testimony by questioning the FBI agent about inconsistencies between McDonald's testimony at trial and prior oral statements he made to the agent, which were contained in the summary. Hall was afforded an opportunity to recall McDonald in order to cross-examine him about these inconsis-

---

**3.** Hall's claims of constitutional violations do not change the proper standard of review. The Confrontation Clause of the 6th Amendment "guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987) (emphasis in original).

**4.** Q: Look down at the bottom where it says, "CI 73–14 told Hall to have Smith deliver the crack to Montgomery and Hall Street," This is what you told the government agent that Hall said to you; true? (R8—246).

**5.** 18 U.S.C. § 3500 (1985).

tencies, but for whatever reason, he declined. The district court properly exercised its discretion in requiring the proper foundation be laid with respect to the agent's summary.

### 4. Limitations of Hall's Direct Examination

■ Hall contends that the district court erroneously placed restrictions on his own testimony and on his direct examination of defense witnesses, which prevented him from showing the extent of income he earned from legitimate businesses as well as the methods he used to win money at gambling. Even relevant evidence "may be excluded if its probative value is substantially outweighed by ... considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. The district court allowed Hall to answer questions about four legitimate business enterprises and other sources of outside income but sustained an objection as to the relevance of why one of those businesses did not generate income. The fact that a business *lost* money is certainly irrelevant in trying to prove the extent of legitimate income. In addition, the district court permitted Hall to answer many questions about his gambling activities, including a brief explanation of the methods he used to win money. The district did not allow detailed explanations about the intricacies of Hall's betting system because of considerations of undue delay and irrelevance. Hall was able to make an adequate showing to the jury that he had income from sources other than cocaine sales, including gambling. The district court did not abuse its discretion in restricting certain lines of questioning, nor was Hall prejudiced in his ability to present his case to the jury.

### 5. Admission of Grand Jury Transcript

■ Hall asserts error by the district court in allowing the jury to review the transcript of the grand jury testimony during its deliberations. Hall's argument rests on the false premise that the grand jury testimony was not entered into evidence during the trial. The record clearly reflects that the transcript was entered into evidence contemporaneously with two other exhibits. (R9—662). Defense counsel objected to the two other exhibits but not to the grand jury transcript. Since Hall was charged with making false declarations before the grand jury, the transcripts of the grand jury proceedings were directly relevant to the government's case. Where transcripts of grand jury testimony are offered to support a charge of perjury, the transcripts constitute substantive evidence of the charge and may be reviewed by the jury during its deliberations. The district court properly allowed the transcript to be considered by the jury during deliberations.

### 6. Admission of Evidence of a Shooting

■ Johnson contends that the district court erred in denying his motion for mistrial after a government witness testified that his mother had been shot after the witness had entered a plea agreement. This issue was not raised in Johnson's motion for new trial and therefore is reviewed for plain error. *Young, supra.* Immediately after the shooting was mentioned, the district court instructed the jury to disregard any statement about the witness' mother being shot. We must presume that the jury followed that instruction, *United States v. LaSpesa,* 956 F.2d 1027, 1033 (11th Cir.1992), and we find nothing in the record to upset that presumption. There was no connection, either express or implied, between the shooting and any of the appellants, nor is there anything to suggest that this statement affected Johnson's right to a fair trial or that a miscarriage of justice occurred. The district court did not err in denying Johnson's motion for mistrial.

### G. SUFFICIENCY OF THE EVIDENCE

When a jury finds a defendant guilty, its verdict must stand if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307,

319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). "In considering appellants' claims of insufficient evidence, this court must view all of the evidence, together with all logical inferences flowing from that evidence, in the light most favorable to the government, and must draw all credibility choices in favor of the finder of fact". *United States v. Perez*, 698 F.2d 1168, 1169 (11th Cir.1983).

### 1. *Count One—Conspiracy to Distribute Cocaine*

 Each appellant challenges his conviction for conspiracy to distribute cocaine. To convict a defendant of conspiracy under 21 U.S.C. § 846 (Supp.1993), the government must prove "(1) an agreement to possess with intent to distribute cocaine, (2) the defendant's knowledge of the essential objective of the agreement, and (3) the defendant's voluntary participation in the illegal venture." *United States v. Gardiner*, 955 F.2d 1492, 1496 (11th Cir.1992). "Each defendant must have joined the conspiracy intentionally, but each need not be privy to all the details of the conspiracy or be aware of all the other conspirators, or participate in every stage of the conspiracy." *United States v. Cole*, 755 F.2d 748, 755 (11th Cir.1985); *United States v. Jones*, 913 F.2d 1552, 1557 (11th Cir.1990) ("A common scheme or plan may be inferred from the conduct of the alleged participants or from other circumstances."). A defendant may be convicted even if he entered the conspiracy after its inception and played only a minor role. See *United States v. Catchings*, 922 F.2d 777 (11th Cir.1991) (evidence that defendant "cooked" the cocaine was sufficient to show he played an essential role in helping others distribute crack). In this case Calvin Morris, an unindicted co-conspirator, directly implicated Hall, Johnson, and Saget in a conspiracy to distribute crack cocaine. There was also testimony that Roberson regularly sold crack, occasionally at Johnson's instruction. Although Roberson may not have been aware of the extent of the conspiracy, the frequency and duration of Roberson's crack sales support an inference that Roberson knowingly and volun-

tarily participated with Johnson, a central partner in the conspiracy, to distribute crack cocaine. The evidence was sufficient to support the jury's verdict that a conspiracy did in fact exist and that each appellant participated in it for the purpose of distributing crack cocaine.

### 2. *Counts 4 & 5—The Travel Act*

 Hall challenges the sufficiency of the evidence with respect to his conviction for violating 18 U.S.C. § 1952 (Supp. 1993), commonly known as the Travel Act. This statute prohibits interstate travel with the intent to "promote, manage, establish, carry on, or facilitate [any] unlawful activity...." 18 U.S.C. § 1952(a)(3). "Unlawful activity" is further defined as "any business enterprise involving ... narcotics or controlled substances." 18 U.S.C. § 1952(b)(1). If the defendant engages in a continuous course of cocaine distribution rather than a sporadic or casual course of conduct, then the statutory requirement of a business enterprise involving narcotics is satisfied, and a single incident of interstate travel to carry on or facilitate that enterprise violates this statute. *United States v. Smith*, 918 F.2d 1551, 1565 (11th Cir. 1990). The evidence of Hall's involvement in the cocaine conspiracy establishes the requisite business enterprise element. In addition, Morris testified that Hall accompanied himself and Johnson on at least two trips to Florida to deliver money to Saget for drug purchases. FBI agents, who conducted surveillance on the second trip, corroborated Morris' testimony that Hall traveled to Florida and met with Saget. Viewed in the light most favorable to the government, the evidence shows that Hall was involved in a business enterprise involving the distribution of crack and that Hall facilitated that enterprise by traveling to Florida to deliver money for the purchase of crack cocaine.

### 3. *Count Fifteen—Money Laundering*

 Hall also challenges the sufficiency of the evidence with respect to his conviction for money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) (Supp.1993). To establish

a violation of § 1956(a)(1), the government must prove that the defendant "knowingly conducted a financial transaction which involved the proceeds of drug distribution and that he did so either with the intent to promote his drug business or with knowledge that the transaction was designed to disguise the nature or source of those proceeds." *United States v. Blackman,* 897 F.2d 309, 316 (8th Cir.1990). Morris testified that the cocaine partnership intended to invest the drug proceeds in a business, that $12,000 to $14,000 of the drug proceeds were actually invested in the renovation of a nightclub, and that payments for the building materials were made by Hall. He further testified that he was instructed by Hall to say the money for the renovation came from gambling winnings. Morris' testimony provides a direct link between drug proceeds and the money used for renovating the nightclub, as well as an intent to hide the source of financing for the renovation. The jury was entitled to credit the testimony of Morris and find all the elements necessary to convict Hall of money laundering.

4. *Count Ten—Obstruction of Justice*

 Hall and Johnson were convicted under the omnibus clause of 18 U.S.C. § 1503 (1984) for endeavoring "to influence, obstruct, or impede the due administration of justice" by questioning a grand juror about an investigation. Fed. R.Crim.P. 6(e)(2), which imposes a general rule of secrecy, states that a "grand juror .. shall not disclose matters occurring before the grand jury." In order to convict an individual under § 1503, the government must prove that the defendants "knowingly and intentionally undertook an action from which an obstruction of justice was a reasonably foreseeable result." *United States v. Thomas,* 916 F.2d 647, 651 (11th Cir.1990). The government is not required to prove that a defendant had the specific purpose of obstructing justice, but it must establish that the conduct was motivated, at least in part, by a "corrupt motive". *Id.* Any person "who knowingly violates Rule

6(e)(2) [Fed.R.Crim.P.] or induces or attempts to induce another person to violate the Rule may be [convicted] for obstruction of justice under § 1503." *Blalock v. United States,* 844 F.2d 1546, 1561 n. 22 (11th Cir.1988) (JJ. Tjoflat and Roetger, concurring specially). Johnson claims that the grand juror, without any influence from Johnson, sought out himself and Hall and volunteered the information. Although the grand juror apparently made the initial contact with Johnson on his own initiative, the evidence supports a reasonable inference that both Hall and Johnson questioned the juror about who was being investigated, that they both met with him thereafter to discuss the grand jury's investigation, and that both asked the grand juror to keep them informed of further developments. The disclosure of secret information by a grand juror, which otherwise would not have been revealed, was a reasonably foreseeable result of meeting with the grand juror, questioning him about the grand jury investigation, and asking him to keep them informed of developments. Hall and Johnson were more that just passive recipients of secret information, they actively solicited information relating to the grand jury proceedings and the evidence supported the jury's verdict.

## H. HALL'S SENTENCE

 Hall contends that his sentence is based on an incorrect calculation of the amount of cocaine involved. "The determination of the quantity of cocaine involved in a conspiracy for the purposes of sentencing is a factual determination subject to the clearly erroneous standard." *United States v. Alston,* 895 F.2d 1362, 1369 (11th Cir.1990). The district court concluded that more than 5 kilograms of cocaine were involved in the conspiracy and consequently applied U.S.S.G. § 2D1.1(c)(2)[6] in sentencing Hall. Hall argues that his financial records indicate that he was not reasonably capable of purchasing such large quantities of cocaine, and since the FBI actually seized less than one-fourth of a

---

**6.** U.S.S.G. § 2D1.1(c)(2) specifies a base offense level of 40 if the defendant is in possession of

"at least 5 KG but less than 15 KG of cocaine base."

kilogram of cocaine, the district court should have applied U.S.S.G. § 2D1.1(c)(4) (less than 1.5 kilograms of cocaine base) in determining his base offense level. Morris testified that the partnership distributed at least one kilogram of cocaine a month for ten months. In addition, Joseph Williams, an unindicted co-conspirator, testified that Hall bought nine ounces of cocaine from him each week for eighteen months. In light of the direct evidence that over ten kilograms of cocaine were involved, the district court's determination of the amount of cocaine involved was not clearly erroneous.

## I. SENTENCE ENHANCEMENT FOR POSSESSION OF COCAINE BASE (CRACK)

■■■ Johnson contends that the term "cocaine base" as used in 21 U.S.C. § 841 (Supp.1993) and in U.S.S.G. § 2D1.1, is unconstitutionally vague. Johnson's argument is foreclosed by our decision in *United States v. Williams*, 876 F.2d 1521 (11th Cir.1989), in which this court held that Congress' failure to define "cocaine base" did not render the statute unconstitutional. Johnson relies on authority from other circuits to buttress his argument. We decline the opportunity to revisit this issue and instead reaffirm our holding in *Williams*. The evidence supports a finding that Johnson possessed "cocaine base" and the district court properly sentenced Johnson pursuant to U.S.S.G. § 2D1.1.

## J. SENTENCE ENHANCEMENT FOR POSSESSION OF A DANGEROUS WEAPON

■■■ The district court, applying U.S.S.G. § 2D1.1(b)(1)[7], enhanced Johnson's base offense level by two points for possession of a dangerous weapon. Johnson argues that his sentence enhancement was improper because there was no showing that he actually possessed or used any weapons. However, a co-conspirator's sentence may be enhanced for possession of a

dangerous weapon if "(1) the possessor is charged as a conspirator, (2) the defendant who's sentence is to be enhanced was a member of the conspiracy at the time of the firearm possession; and (3) the possession of the firearm was in furtherance of the conspiracy." *U.S. v. Martinez*, 924 F.2d 209, 210 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 203, 116 L.Ed.2d 163 (1991). All of these elements are satisfied in the instant case. Four weapons were seized from Roberson's house. Roberson was charged and convicted as a conspirator. Three of the weapons were concealed in a room with 3.7 grams of crack. The district court's finding that possession of the weapons was in furtherance of the conspiracy is supported not only by the proximity of the weapons to the crack, but also by this court's recognition that firearms are "tools of illegal narcotics trafficking." *Terzado–Madruga*, supra. Therefore, application of the two point enhancement was not clearly erroneous.

## K. REDUCTION OF SENTENCE FOR ACCEPTANCE OF RESPONSIBILITY

■■■ Johnson asserts that he should have been granted a two point reduction for acceptance of responsibility because he admitted "his *limited* involvement" in the charges. In order to qualify for acceptance of responsibility, the sentencing guidelines specify that Johnson must "truthfully [admit] the conduct comprising the offense(s) of conviction, and truthfully [admit] or not falsely [deny] any additional relevant conduct" for which he is accountable. U.S.S.G. § 3E1.1 application note 1(a). "A defendant who falsely denies or frivolously contests relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." *Id.* Johnson has never admitted to being part of the conspiracy, despite the jury's verdict. Johnson's denial of his involvement in the conspiracy justi-

---

**7.** § 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."

Application note 3 states: "This adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."

fies the district court's denial of credit for acceptance of responsibility.

## III. CONCLUSION

We have carefully considered all additional issues raised by the appellants on appeal but not specifically addressed above and we find no reversible error as to any appellant. For the foregoing reasons, the convictions of each appellant on each count are AFFIRMED.