[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-10727
Non-Argument Calendar

_____

D. C. Docket No. 05-20818-CR-ASG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TAURUS GETER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 21, 2008)**

Before CARNES, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Taurus Geter appeals his conviction and sentence for conspiring to possess with the intent to distribute at least five grams of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Geter argues that the district court improperly admitted unfairly prejudicial testimony from a confidential informant ("CI") and cooperating witness Elston Orjuna concerning activities that occurred outside the dates of the conspiracy as charged in the indictment. Geter contends that the testimony was not inextricably intertwined with the charged conspiracy and asserts that any probative value was outweighed by its highly prejudicial effect. Second, Geter argues that, at best, the evidence presented at trial established his presence in the area where drug transactions occurred and his association with another accused person. Geter contends that, excluding the prejudicial testimony concerning events outside the scope of the charged conspiracy, this evidence, without more, is insufficient to prove that he participated in an illegal agreement to distribute heroin.

Third, Geter argues that the CI's testimony concerning a co-conspirator's statement referencing an earlier federal indictment gave the jurors the false impression that he had committed other crimes and should not be permitted to escape justice. Geter asserts that the lapse between the statement and the district court's curative instruction was too great to remedy any potential prejudice and

2

contends that, as a result, the district court erred by denying his motion for mistrial. Last, Geter argues that his 210-month sentence, based on his status as a career offender, was unreasonable in light of the amount of drugs actually involved in the offense.

For the reasons set forth more fully below, we affirm Geter's conviction and sentence.

## I.  Admission of Testimony Concerning Events
## Outside the Dates of the Charged Conspiracy

We review the district court's evidentiary rulings for abuse of discretion. United States v. Eckhardt, 466 F.3d 938, 946 (11th Cir. 2006), cert. denied, 127 S.Ct. 1305 (2007).  "[W]hen employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard."  United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc).  Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed.R.Evid. 404(b).  Rule 404(b) is not applicable, however, "where the evidence concerns the context, motive, and set-up of the crime and is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."  United States v. Smith, 122 F.3d

3

1355, 1359 (11th Cir. 1997). "[E]vidence is inextricably intertwined with the evidence regarding the charged offense it if forms an "integral an natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007) (quotation omitted). "Nonetheless, evidence of criminal activity other than the charged offense, whether inside or outside the scope of Rule 404(b), must still satisfy the requirements of Rule 403." Id. (citation omitted). Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed.R.Evid. 403.

a.      Geter's Violent Threats to Competitors

At trial, the CI testified that Geter protected his "territory" by threatening competitors. The CI further testified that, one week after a controlled buy on December 15, 2004, he observed Geter threatening a man, noting that the man had been selling drugs marked with the symbol of another supplier. Although this testimony concerned events that were, admittedly, outside the time frame of the charged conspiracy, it was nevertheless "on or about" December 16, 2004, the date charged in the indictment. See United States v. Pope, 132 F.3d 684, 688-89 (11th Cir. 1998) (holding that "time is not an essential element of the offense, so long as the government establishes that the conduct occurred reasonably near the date that

4

the indictment mentions"). Thus, the CI's testimony is, arguably, linked in time with the charged conspiracy, and the district court did not abuse its discretion in admitting it as intrinsic evidence. See Edouard, 485 F.3d at 1346; Smith, 122 F.3d at 1359. Moreover, even accepting Geter's argument that the probative value of such testimony was outweighed by its prejudicial effect, "it is doubtful that [the CI's] testimony caused any unfair prejudice." Edouard, 485 F.3d at 1346. "[I]n a criminal trial, relevant evidence is inherently prejudicial; it is only when unfair prejudice substantially outweighs probative value that [Rule 403] permits exclusion." Id. (quotation and alteration omitted). This is particularly true in light of the remaining evidence of Geter's guilt, discussed below.

b.     Geter's Pre-2004 Drug Distribution

Here, the indictment alleged that Geter conspired with others to possess with the intent to distribute heroin "on or about October 21, 2004, and continuing through on or about December 16, 2004." At trial, Orjuna testified that, from 1998 until October 2003, he sold heroin for Geter on a daily basis. Orjuna noted that Geter led an organization consisting of two lieutenants and multiple sellers, who sold specifically-marked heroin at various locations in Overtown. Orjuna noted that Geter gave drugs to the lieutenants, who distributed them to the sellers and collected the drugs proceeds, which they returned to Geter. Orjuna also identified

5

the key participants in the organization, including Geter and his two lieutenants, "Zeus" and Thomas Jerry. Orjuna's testimony is consistent with the CI's account of the events that occurred within the time frame of the charged conspiracy. The CI testified that he contacted Geter and, eventually, began to sell drugs for him on 14th Street in Overtown. Geter employed two lieutenants, Zeus and Jerry, who coordinated the distribution of the drugs, which Geter packaged in specially-marked bags, and collected the drug proceeds at the end of each shift. Jerry provided the CI with packs of heroin, and assigned him to work on a specific street corner with another seller, Dominick Jagne. The CI sold the heroin as instructed and returned the proceeds to Jerry.

Although Orjuna's employment with Geter ended with his arrest in October 2003, before the time frame of the charged conspiracy, this separation does not automatically make his testimony extrinsic. See United States v. Muscatell, 42 F.3d 627, 630 (11th Cir. 1995). In Muscatell, we held that testimony regarding a continuing course of conduct "involving the same principal actors, in the same roles, employing the same modus operandi," was properly admissible as intrinsic evidence, despite the fact that some of the acts occurred outside the time frame of the charged offenses. Id. at 630-31. We reasoned that "[o]ther transactions connected with the offenses charged have long been used to show a general

6

pattern, the necessary criminal intent, or the guilty knowledge of the defendant." Id. at 631 (quotation omitted). Moreover, evidence of prior drug dealings is highly probative of intent in later charges of conspiracy to distribute a controlled substance. United States v. Diaz-Lizaraza, 981 F.2d 1216, 1224 (11th Cir. 1993). Accordingly, the district court did not abuse its discretion in admitting Orjuna's testimony because it established the intent and motive behind the instant conspiracy, demonstrated a pattern of ongoing conduct involving Geter and his co-conspirators, and was integral to the explanation of the circumstances surrounding the charged conspiracy.

## II. Sufficiency of the Evidence

We review de novo "whether there is sufficient evidence to support the jury's verdict." United States v. Ortiz, 318 F.3d 1030, 1036 (11th Cir. 2003). We will affirm the jury's verdict "if a reasonable trier of fact could conclude that the evidence establishes guilt beyond a reasonable doubt." Id. (quotation omitted). On review, the evidence is viewed "in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." Id. (quotation omitted). We are "bound by the jury's credibility determinations, and by its rejection of the inferences raised by the defendant." United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005). "The evidence need not exclude

7

every hypothesis of innocence or be completely inconsistent with every conclusion other than guilt because a jury may select among constructions of the evidence." United States v. Bailey, 123 F.3d 1381, 1391 (11th Cir. 1997).

Conspiracy to possess heroin with the intent to distribute requires the government to prove beyond a reasonable doubt "(1) that a conspiracy existed; (2) that the defendant knew of it; and (3) that the defendant, with knowledge, voluntarily joined it." United States v. Molina, 443 F.3d 824, 828 (11th Cir. 2006) (quotation omitted).

Although presence is a permissible factor to be considered in determining whether a defendant conspired with another, "it is well settled that mere presence will not support a conviction." United States v. Charles, 313 F.3d 1278, 1284 (11th Cir 2002). "Mere presence, guilty knowledge, even sympathetic observation" and close association with a co-conspirator are insufficient, without more, to support a conviction for conspiracy to distribute drugs. United States v. Lyons, 53 F.3d 1198, 1201 (11th Cir. 1995). Yet, such factors may raise a permissible inference of participation in a conspiracy, which the jury may consider as a "material and probative factor . . . in reaching its decision." United States v. Hernandez, 896 F.2d 513, 518 (11th Cir. 1990).

Here, the evidence presented at trial, viewed in the light most favorable to

the government, supports a finding that the jury in this case could reasonably conclude that Geter was more than a "sympathetic observer" and, thus, that a conspiracy between Geter and the CI existed. See Lyons, 53 F.3d at 1201. The record indicates that the CI contacted Geter, who eventually asked him to sell heroin at 1943 Northwest 2nd Court. The CI asked Geter if he could sell drugs on 14th Street instead and Geter consented. The CI met Geter and one of his lieutenants, Jerry, at 1971 Northwest 2nd Court ("the 1971 building"). Jerry coordinated the distribution of drugs to the sellers and collected the drug proceeds at the end of each shift. Jerry assigned the CI to work with another seller, Jagne, on 14th Street.

The CI set up two controlled buys with undercover officers from the DEA and the City of Miami Police Department. The CI arrived at the 1971 building at the beginning of each shift, where Jerry instructed him to see Jagne, who had already picked up the drugs that were to be sold that night. The CI sold the drugs, which were marked with symbols identifying Geter as the source, to the undercover officers and brought the proceeds back to Jerry. The CI requested additional drugs after the first controlled buy, but Jerry advised that he had to wait for Geter to package the drugs. Geter did not fulfill the CI's request. Undercover officers observed Geter at the 1971 building during each of the controlled buys.

9

Geter often sat in a car parked in front of the building, and was also seen sitting under the stairwell. The officers also observed Jerry as he collected the drug proceeds and gave them to a person sitting in a car in front of the building. Based on these facts, the jury could conclude that Geter employed the CI and others in a heroin distribution operation, packaged the heroin in specially-marked baggies, provided those drugs to lieutenants, oversaw the distribution of those drugs to various sellers, and ultimately received the proceeds from each sale. Accordingly, the evidence was sufficient to establish that an agreement existed between Geter and the CI to possess with the intent to distribute at least five grams of heroin.

### III. Denial of Motion for Mistrial

We review the denial of a motion for a mistrial for abuse of discretion. United States v. Diaz, 248 F.3d 1065, 1101 (11th Cir. 2001). "If a district court issues a curative instruction, we will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." Id. (quotation and citation omitted). Jurors are presumed to follow the court's instructions. United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005). In addition, "prejudicial testimony will not mandate a mistrial when there is other significant evidence of guilt which reduces the likelihood that the otherwise improper testimony had a substantial impact on the verdict of the jury." United States v. Saget, 991 F.2d

10

702, 708 (11th Cir. 1993) (quotation omitted).

During questioning by the government, the CI testified that one of Geter's lieutenants, Zeus, told him not to refer to Geter by his last name, noting that "a federal indictment come out every three years and that they done previously beat the federal indictment." The district court gave curative instructions as to the CI's testimony, directing the jury to disregard any statements regarding federal indictments. Moreover, as discussed above, there was significant evidence of Geter's guilt which reduces the likelihood that the testimony had a substantial impact on the jury's verdict. Saget, 991 F.2d at 708. Accordingly, the CI's statement regarding a previous federal indictment in the instant case is not so highly prejudicial as to be incurable by the district court's curative instructions, and the district court did not abuse its discretion in denying a mistrial based on this testimony.

IV. Reasonableness of Geter's 210-month Sentence

We review the final sentence imposed by the district court for reasonableness. United States v. Winingear, 422 F.3d 1241, 1244 (11th Cir. 2005). Unreasonableness may be procedural, when the court's procedure does not follow Booker's requirements, or substantive. See Gall v. United States, 552 U.S. ___, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007); United States v. Hunt, 459 F.3d 1180,

1182 n.3 (11th Cir. 2006). The Supreme Court has explained that a sentence may be procedurally unreasonable if the district court improperly calculates the guideline imprisonment range, treats the Guidelines as mandatory, fails to consider the appropriate statutory factors, bases the sentence on clearly erroneous facts, or fails to adequately explain its reasoning. Gall, 552 U.S. at ___, 128 S.Ct. at 597. The Court also has explained that the substantive reasonableness of a sentence is reviewed under an abuse-of-discretion standard. Id. It has suggested that review for substantive reasonableness under this standard involves inquiring whether the factors in 18 U.S.C. § 3553(a) support the sentence in question. Id. at ___, 128 S.Ct. at 600.

When imposing a sentence, the district court must first correctly calculate the Guidelines. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). Second, the district court must consider the following factors to determine a reasonable sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

12

Id. (citing 18 U.S.C. § 3553(a)).

"[T]here is a range of reasonable sentences from which the district court may choose" and the burden of establishing that the sentence is unreasonable in light of the record and the § 3553(a) factors lies with the party challenging the sentence. Talley, 431 F.3d at 788. We have held that a sentence within the guidelines range is neither per se reasonable, nor entitled to a presumption of reasonableness. See id. at 786-88; Hunt, 459 F.3d at 1185.

Geter does not challenge the district court's finding that he qualified as a career offender or otherwise challenge the procedural reasonableness of his sentence on appeal. Nevertheless, the record demonstrates that the district court correctly calculated the advisory guideline range, expressly considered the § 3553(a) factors, and sufficiently explained its reasons for imposing a 210-month sentence. See Gall, 552 U.S. at ___, 128 S.Ct. at 597.

Similarly, Geter also has not established that his sentence is substantively unreasonable. See Hunt, 459 F.3d at 1182 n.3; Gall, 552 U.S. at ___, 128 S.Ct. at 597. Geter's 210-month sentence was at the low-end of the advisory guideline range. The record indicates that the district court considered several factors, including the nature and seriousness of the instant offense and the relatively small amount of heroin involved, along with Geter's significant criminal history in

13

determining that a Guidelines sentence, within the career offender range, was appropriate. Therefore, the § 3553(a) factors supported the district court's sentence, and the court did not abuse its discretion. See <u>Gall</u>, 552 U.S. at ___, 128 S.Ct. at 597. Thus, viewing the sentencing proceeding as a whole, Geter's sentence is reasonable.

In light of the foregoing, Geter's conviction and sentence are

**AFFIRMED.**