[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10498
Non-Argument Calendar

_____

D.C. Docket No. 3:17-cr-00223-JA-TFM-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WORLDLY DIEAGO HOLSTICK,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(April 20, 2020)

Before ED CARNES, Chief Judge, JILL PRYOR, and ANDERSON, Circuit
Judges.

PER CURIAM:

Worldly Holstick was indicted, along with 18 others, for a variety of drug offenses. He moved to suppress the evidence taken from his home. The district court denied that motion. Holstick pleaded guilty to three drug-related charges but preserved his right to appeal the denial of his motion to suppress. This is Holstick's appeal.

I.

In September 2016, city of Auburn police responded to a call reporting shots fired in a trailer park. Officer White, one of the responding officers, was on the way to investigate when he found two other officers attending to a child who had been shot. The family of the child pointed him to the street where the shooting had occurred.

When White arrived in the trailer park, he was flagged down by two witnesses who pointed to the home where the shots were fired. White observed bullet holes in the home and saw a nearby car with a broken window and bullet holes in it. Based on his observations, White was concerned that there might be victims inside the trailer, so he and two other officers announced their presence, entered, and searched the trailer for victims. During the search of the home the officers observed a DVR, a device recording video caught by security cameras in and around the house. One of the officers also kicked over a black box that was

2

previously closed, opening it.  Finding no victims or anyone else in the home, White taped off the home as a crime scene.

About fifteen minutes after White searched the trailer, two more officers conducted a second search of the home.  During that search they saw drug paraphernalia in the box that had been knocked over during the first search.  At some point during one of the searches, it is unclear from the record which search, one of the officers smelled green marijuana.

Officer Creighton, who was not one of the officers who entered the home on either search, submitted an affidavit to get a warrant to search the home.  He did not state that there had been two searches, nor did he disclose that a box had been kicked over during the first search.  He alleged that based on the observations of the officers who searched the home — drug paraphernalia, the smell of marijuana, and DVR equipment that might have shown whether the home was occupied when shots were fired at it — there was probable cause to search the home.  The judge signed the warrant authorizing the officers to search the home for drugs, drug paraphernalia, guns, ammunition, the "DVR recording device and monitor and the data contained therein, [and] any electronic devices and the data contained therein."

The officers conducted the search and collected the DVR equipment, guns, ammunition, drugs, and drugs paraphernalia.  Holstick moved to suppress all

3

evidence found in the home, arguing primarily that the shooting did not provide probable cause or an exigent circumstance for the officers to enter the home and that because the initial entry was wrongful, all evidence from within the home should be suppressed. The magistrate judge conducted two hearings[1] and issued a report and recommendation recommending that the district court deny the motion to suppress. Holstick objected. In his objections Holstick raised, for the first time, the arguments he makes on appeal. Even though he had not made those arguments in his motion to suppress, the district court chose to consider those objections, but it overruled them and adopted the report.

One week before trial, Holstick moved to have the DVR video reviewed by an expert, but the court denied his motion as untimely. Holstick then pleaded guilty to three counts — conspiracy to distribute controlled substances, conspiracy to conduct unlawful transactions affecting interstate commerce, and possession of a firearm in furtherance of a drug trafficking crime — but he preserved his right to appeal the denial of his motion to suppress.

Holstick appeals, contending that: (1) the officers exceeded the scope of the exigent circumstances, (2) the officers did not have probable cause to search the

---

[1] The magistrate judge held a second hearing, at Holstick's request, so that the court could view the surveillance video and to clarify a factual dispute. In the first hearing, the government's witness insisted that the video showed Holstick leaving the top off of the box containing drug paraphernalia. In the second hearing, after the court watched the video, the same witness admitted that the box was closed and the first officers kicked it open.

home because they opened the box containing the drug paraphernalia and there is no credible evidence about who smelled the marijuana, (3) the warrant was overly broad with regard to the DVR and failed to describe with particularity what digital information the officers could search, (4) the good faith exception is inapplicable here, and (5) the court erred by refusing to allow an expert to examine the DVR.

## II.

Holstick's first four objections concern his motion to suppress. We begin with those.

### A.

When reviewing a district court's suppression ruling, we review factual findings for clear error and review de novo the court's legal conclusions. See United States v. Hollis, 780 F.3d 1064, 1068 (11th Cir. 2015).

The government contends that we should not review any of Holstick's contentions, other than the one about whether the officers' original search exceeded the scope of the exigent circumstances, because Holstick did not raise the other issues in his motion to suppress the evidence before the magistrate judge. By not raising those issues in his motion, the government contends, Holstick invited error. Or, if we conclude that he did not invite error, we should review for only plain error.

We disagree.  Every case that the government cites, both for the proposition that Holstick invited error and for the proposition that plain error review should apply, involves a party who did not raise an issue <u>at all</u> before the district court.  That makes sense because "[t]he doctrine of invited error is implicated when a party induces or invites the district court into making an error."  <u>United States v. Stone</u>, 139 F.3d 822, 838 (11th Cir. 1998).  And "[t]he purpose behind imposing the requirements of plain error review is to enforce the requirement that these kinds of objections should first be made in district court so that the trial court may address and resolve them contemporaneously."  <u>United States v. DiFalco</u>, 837 F.3d 1207, 1221 n.2 (11th Cir. 2016).

Holstick did not raise in his motion to suppress before the magistrate judge the specific issues he is presenting to us.  But he did raise them before the district court in his objection to the magistrate judge's report and recommendation, and the district court chose to consider Holstick's arguments and decide them, which it had discretion to do.  <u>Stephens v. Tolbert</u>, 471 F.3d 1173, 1176 (11th Cir. 2006).  The district court not only had the opportunity to "address and resolve" the objections, it actually did so.  <u>DiFalco</u>, 837 F.3d at 1221 n.2.  Neither the invited error doctrine nor plain error review applies here.

B.

6

Holstick's first contention is that the search of his home "exceeded the scope" of the exigent circumstances that existed at the time. But he also concedes that "it is clear that an exigent circumstance existed." And he does not tell us what sort of search was allowed under the exigent circumstance or in what way the search that the officers undertook exceeded the scope of what was allowed. We are not convinced by his argument, and the issue is probably waived anyway. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments or authority.").

## C.

Holstick next contends that the officers lacked probable cause to obtain a search warrant. He argues that the drug paraphernalia was not in plain view until the officers kicked the box open. He also argues that there was no credible evidence that an officer smelled marijuana because no one who testified at either suppression hearing could identify which officer reported smelling it.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. When reviewing a warrant for probable cause, our duty is limited to ensuring

7

that "a substantial basis" for probable cause existed. Illinois v. Gates, 462 U.S. 213, 238–39 (1983) (quotation marks omitted). The smell of marijuana is enough to show probable cause for a search warrant. United States v. Tobin, 923 F.2d 1506, 1512 (11th Cir. 1991).

"At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." United States v. Raddatz, 447 U.S. 667, 679 (1980). When a defendant challenges the truthfulness of a police officer's affidavit in support of a search warrant, the defendant must provide "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." Franks v. Delaware, 438 U.S. 154, 171 (1978). Mere conclusory statements are not enough. Id. If the allegedly false statement was necessary to the probable cause finding, the court must hold a hearing to determine the accuracy of the affiant's statement. Id. at 156.

In arguing that there was "[n]o credible evidence . . . that an officer smelled marijuana," Holstick notes that the witness who testified had "no clue which officer is alleged to have smelled the marijuana." But he does not specifically state that there was any "deliberate falsehood or . . . reckless disregard for the truth." Franks, 438 U.S. at 171. Even if his argument can be read to imply that the police

provided deliberately false information or recklessly disregarded the truth — a generous reading of them — he provides no "offer of proof" that they did. Id.

As a result, we accept the officer's statement in the affidavit that one of the officers smelled marijuana. And because an officer smelled marijuana, the government had probable cause to obtain a search warrant to search for drugs and guns. See Tobin, 923 F.2d at 1512.[2]

### D.

Holstick next contends that the warrant was overly broad with regard to the DVR and failed to describe with particularity the digital information that the officers had probable cause to search. He concedes that there was probable cause to obtain a warrant to search the DVR for the video of the outside of the home. But he argues that there was no justification for the officers to search any recording of activities within the home, because the shots that the officers were purportedly investigating were fired outside of the home.

"A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad." United States v. Travers, 233 F.3d 1327, 1329 (11th Cir. 2000). But "elaborate specificity" is not required. United States v. Peagler, 847 F.2d 756, 757 (11th Cir. 1988). A

---

[2] Because the smell of marijuana provided probable cause to search the home, we do not need to consider whether the drug paraphernalia that was in the black box was in plain view.

description in a warrant is constitutionally sufficient if it "enables the searcher to reasonably ascertain and identify the things authorized to be seized." United States v. Wuagneux, 683 F.2d 1343, 1348 (11th Cir. 1982).

Under Alabama law, whether a dwelling is occupied at the time of a shooting determines if an individual who shot at the dwelling may be charged with a Class B felony or only a Class C felony. Ala. Code § 13A-11-61(b)-(c). That is why the officers reasonably needed to view the part of the recording that showed the inside of the home to determine whether it was occupied at the time of the shooting. Holstick argues the officers did not need it because they had already searched the house and found it was unoccupied. But the search occurred at least five minutes after the shooting; the police needed to know if someone had been in the house at the time of the shooting and then left it during the five minutes before the police arrived.

The search warrant was sufficiently specific because it described the DVR with enough particularity to allow police to reasonably identify it and search the relevant parts of the video: the inside and the outside of the house at the time of the shooting. See Wuagneux, 683 F.2d at 1348; Peagler, 847 F.2d at 757. The warrant was not overly broad.[3]

---

[3] Because the officers had probable cause to search the house for drugs and guns, and because the warrant was not overly broad in allowing the officers to review DVR footage of the inside of the house, we do not need to determine whether the good faith exception applies.

III.

Finally, Holstick contends that the court erred by refusing to allow an expert to examine the video from the DVR to determine if it had been altered. Holstick was concerned because the video jumped at certain times. The government argued that the video jumped because it was motion activated; it started recording only when it detected movement. Holstick claimed that he had bought and set up the equipment, and it was not motion activated, so the jumping must indicate that the video had been altered.

We review a district court's evidentiary rulings only for an abuse of discretion. United States v. Saget, 991 F.2d 702, 709 (11th Cir. 1993). Even if the district court abused its discretion, the conviction must be affirmed unless the defendant can meet his burden of demonstrating that the error affected his substantial rights. Id.

Holstick watched the video at the second suppression hearing on April 12, 2018. In his objections to the magistrate judge's report and recommendation he asked the district court to either exclude the video or allow an expert to examine it to determine whether it had been altered. But the district court found that Holstick had "provided neither admissible evidence nor authority for his argument" and that his concern went to the weight the jury should assign to the video, not to its admissibility. So the court overruled that objection.

11

Holstick then waited until July 31, one week before trial was set to begin, to file a motion for expert review of the video. The court denied the motion, finding that "the time for expert witnesses and review of the original DVR has long since passed as a jury has already been empaneled and there are mere days before trial." The court noted that Holstick saw the video, at the latest, in April of that year.

On appeal, Holstick challenges the denial of his July 31 motion to have an expert review the video. He contends that the district court abused its discretion in denying the motion as untimely because he had not been able to review the video until the second suppression hearing in April 2018. But that does not explain his delay. He knew on June 4, when the court overruled his objections to the magistrate judge's report and recommendation, that he had not convinced the court that he was entitled to have an expert review the video. Instead, he waited almost two months, until after the jury was empaneled and until one week before trial, to ask for reconsideration. Granting the motion then would almost surely have forced a delay in the trial. The district court did not abuse its discretion in denying the belated motion for reconsideration.

## IV.

Because the officers had probable cause to obtain a search warrant, the warrant was not overly broad, and Holstick failed to establish that the district court

abused its discretion by refusing to allow an expert to review the video from the DVR, we affirm.

**AFFIRM.**