UNITED STATES of America, Plaintiff–Appellee,

v.

Tony RUCKER, Robert Rucker, Jr., Defendants–Appellants.

No. 89–8701.

United States Court of Appeals, Eleventh Circuit.

Oct. 30, 1990.

---

Christopher W. Duncan, Toccoa, Ga., for defendant-appellant Robert Rucker, Jr.

Elizabeth R. Francisco, Macon, Ga., for defendant-appellant Tony Rucker.

Michael Solis and Charles L. Calhoun, Asst. U.S. Attys., Macon, Ga., for plaintiff-appellee.

Before FAY and COX, Circuit Judges, and GODBOLD, Senior Circuit Judge.

**PER CURIAM:**

Robert Rucker, Jr., and his nephew Tony Rucker challenge their convictions on a number of offenses stemming from the discovery of guns and crack cocaine in a car in which they were riding. Although they prevail on different theories, we agree that both their convictions must be reversed and the case remanded for separate trials.

## I. *Facts*

A Georgia State Patrol trooper stopped the Ruckers for speeding. Although Tony had been driving, Robert owned the car. After they had been stopped the trooper saw the two men switch places. The trooper thought Tony appeared nervous. When Tony could not produce a driver's license, the trooper ran a check and discovered that Tony had been declared a habitual motor vehicle violator. The trooper then questioned the two men separately about their trip: Tony said that they had been to Ocala, Florida, to visit his cousin, but Robert said they had been to Valdosta, Georgia, to visit his son.

The Ruckers' unusual actions and answers made the trooper ask permission to search the car, which Robert granted. The trooper discovered a gun under a jacket in the middle of the front bench-style seat, a rifle in the trunk, and 199 grams of crack cocaine in paper bags on the front seat passenger floorboard. When questioned later that evening about the drugs by a Georgia Bureau of Investigation (GBI) agent, Tony said he knew nothing about the drugs and that they must belong to his uncle, because they were not his.

## II. *Discussion*

### A. Severance

Robert contends the trial judge committed error by not granting his motion to sever his trial from Tony's. We agree.

We realize that the decision whether to grant a motion for severance lies in the sound discretion of the trial judge and can only be overturned for an abuse of discretion. *U.S. v. Pruitt,* 763 F.2d 1256, 1263 (11th Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986). In order to show an abuse of discretion, "the defendant must

demonstrate that without severance he was unable to receive a fair trial and that he suffered compelling prejudice against which the trial court could offer no protection." *U.S. v. Magdaniel–Mora,* 746 F.2d 715, 718 (11th Cir.1984). Nonetheless, we think that Robert has carried his burden in this case.

■ A defendant may prove compelling prejudice by showing that he and his co-defendants advanced defenses so antagonistic as to be "irreconcilable or mutually exclusive." *Id.* Severance is compelled "if the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant." *U.S. v. Berkowitz,* 662 F.2d 1127, 1134 (5th Cir. Unit B 1981).[1]

■ We think this case presents exactly that situation. We have two related co-defendants, one of whom owns the vehicle, both asserting their ignorance of the contraband, even though it was quite literally right under foot. No reasonable juror could believe *both* of their stories, for to do so would mean that the contraband had been placed there by some unknown third party, and that neither defendant had thought to investigate this mysterious parcel. The unlikely juxtaposition of the co-defendants' protestations of innocence would make each defendant "the government's best witness against the other." *U.S. v. Crawford,* 581 F.2d 489, 492 (5th Cir.1978).[2] This case presents an example of a situation where two defendants' stories logically conflict to the point " 'that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.' " *U.S. v. Eastwood,* 489 F.2d 818, 822 n. 5 (5th Cir.1973) (quoting *U.S. v. Robinson,* 432 F.2d 1348, 1351 (D.C.Cir. 1970)).

Before trial Robert made a motion for severance that alleged he and Tony would present antagonistic defenses. The motion alleged that the drugs were Tony's. R1–52. The government's response to that motion included Tony's statement to the GBI agent that the drugs must be Robert's because they were not his. R1–56. With this information and the facts of this case—one car, two persons, and two bags of drugs on the floorboard—the trial judge should have realized that the Ruckers would present unavoidably antagonistic defenses and ordered separate trials. Because he did not, we reverse Robert's conviction and remand for a new, separate trial. In view of our result, we need not reach Robert's other claims of error.[3]

### B. Attorney–Client Privilege

■ During the trial, Robert sought to cross-examine Tony about a statement Tony allegedly made to his former attorney in the case that the drugs were Tony's and Robert knew nothing about them. The judge initially barred any such question because it would violate the attorney-client privilege, but later became concerned about the possible abuse of the privilege by a defendant admitting guilt to his attorney but claiming innocence and implicating his co-defendant at trial. The trial judge therefore allowed Robert's counsel to ask Tony about the alleged statement without referring to Tony's lawyer. Tony admitted having made such a statement. The relevant cross-examination was as follows:

1. The Eleventh Circuit in *Stein v. Reynolds Securities,* 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B.

2. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

3. We realize, of course, that we have not provided any guidance on Robert's claim that his Sixth Amendment right of confrontation was violated when the trial judge did not allow him to cross-examine Tony about matters protected by the attorney-client privilege. We have a duty, however, to reach dispositive issues of statutory or local law before constitutional issues, *see, e.g., Wolston v. Readers Digest Ass'n,* 443 U.S. 157, 160 n. 2, 99 S.Ct. 2701, 2703 n. 2, 61 L.Ed.2d 450 (1979) (cases cited). Because this constitutional issue may arise on remand, but also may not, we do not reach it, because "it is our settled practice to avoid the unnecessary decision of such issues." *F.C.C. v. Pacifica Foundation,* 438 U.S. 726, 734, 98 S.Ct. 3026, 3033, 57 L.Ed.2d 1073 (1978).

Q: Have you ever told any person in this world that the cocaine involved in this case ...

A: Yes, sir.

Q: ... belonged to you and that your uncle knew nothing about it?

A: Have I ever said that?

Q: Yes, sir.

A: Yes, I have.

R5–513.

Later in the trial, however, the trial judge decided he had erred in allowing the question and instructed the jury that it should disregard the question and answer.

■ We have held that the "erroneous admission of evidence a jury is instructed to disregard will only require reversal when the evidence is so prejudicial as to be incurable." *U.S. v. Snowden,* 735 F.2d 1310, 1314 (11th Cir.1984); *U.S. v. Holman,* 680 F.2d 1340, 1352 (11th Cir.1982). We conclude that this is such a case. A few minutes before the improper cross-examination during which Tony admitted to having told some "person in this world" that the drugs were his and his uncle had no knowledge of them, Tony's counsel had elicited from him testimony that he knew nothing about the drugs. Moreover, counsel had led Tony count by count through the indictment, inquiring on each count, with some drama, "are you innocent, or are you guilty?" Predictably, Tony each time answered that he was innocent. Later in the trial, the government introduced into evidence Tony's statement to the GBI that he knew nothing of the drugs and that they must be his uncle's because they were not his.

The stark and apparently irreconcilable conflict between Tony's answer to the improper question and the other evidence could not have been lost on the jury.[4] Especially following so closely on the heels of Tony's repeated claims of innocence, we think Tony's admission of such a statement would have so seriously prejudiced him in the mind of a reasonable juror as to be

incurable. The question and answer do not address an aspect of the case that is either tangential or cumulative; the only real issue at trial was whether the drugs were being transported by Tony, Robert, or both of them. The improper question went directly to the heart of Tony's defense: that he did not know the drugs were in the car. We cannot say that the judge's curative instruction, though properly given, was sufficient to outweigh the prejudicial effect Tony's answer undoubtedly had on the minds of the jury. We therefore reverse Tony's conviction and remand for a new trial. In view of our result, we do not reach Tony's other claims of error except his claim that the evidence was legally insufficient to support his conviction. We find this claim to be without merit.

### III. *Conclusion*

Robert Rucker Jr.'s conviction is REVERSED and the case REMANDED for a new trial. Tony Rucker's conviction is REVERSED and the case REMANDED for a new trial.

---

4. The conflict is not necessarily irreconcilable. Elsewhere in the record Tony claims that when he made the statement to his former attorney accepting all responsibility for the drugs, he did so because bribed by his uncle to do so. Perhaps because the trial judge eventually excluded the answer, no such suggestion was made at trial.