[No. D015204. Fourth. Dist., Div. One. Sept. 30, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
PATRICK DANIEL WALLACE, Defendant and Appellant.

## Counsel

Kathy M. Chavez and Eric S. Multhaup, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Maxine P. Cutler, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

NARES, J.—Patrick Daniel Wallace (Wallace) and Willie Pitts (Pitts) were charged with the murder of Tanya Shaw (Shaw). In a joint trial the jury convicted Wallace and acquitted Pitts. Wallace claims on appeal he was denied due process by the denial of his motion for severance and by rulings admitting evidence of postarrest statements Wallace made to police. We affirm the judgment.

### BACKGROUND[1]

During the early morning hours of October 28, 1990, Wallace and Pitts were ejected from Rasputin's Night Club on West Point Loma Boulevard after they became involved in fights. These two regular patrons, however, were readmitted. Pitts kept talking about shooting someone and was again ejected. Wallace (who had to drive Pitts home) was asked to leave the club with him.

Shortly thereafter four to six .41-caliber bullets were fired from a car at persons in the vicinity of Rasputin's, killing 20-year-old Shaw and wounding her fiancé, James Wood. Darrin Robinson, Lee Robinson, and Aaron Pollard

---

[1]This appeal concerns pretrial rulings only. Our recital of the circumstances of the homicide is accordingly abbreviated.

also suffered wounds. The car from which the shots were fired was owned and driven by Wallace. Pitts was his passenger.

No one clearly saw which of the two did the shooting. One witness saw the driver's arm extended out the window, but also thought Pitts was driving because of the driver's hairstyle. Wallace's prints were on the driver's door, and Pitts's prints were on the right rear window and the passenger side roof.

Two .41 Magnum casings and a box of .41-caliber ammunition were found in the car, and a live hollow-point .41 cartridge was found in a search of Wallace's locker at Navy barracks. At the trial Wallace claimed Pitts had reached across him and then fired out of the driver's window. Pitts testified that Wallace had fired the gun. Pitts was acquitted.

## DISCUSSION

Wallace argues he was prejudiced by denial of motions to (1) sever his trial from that of Pitts, and (2) suppress his in-custody statements as involuntary. Neither point has merit.

## I. DENIAL OF SEVERANCE

Wallace argues his trial should have been severed from that of Pitts, asserting that their inconsistent defenses mandated separate trials. In the trial court, however, the motion to sever was advanced by Pitts. Counsel for Pitts put on record his concerns, focusing on the possibility evidence of statements by a *nontestifying* Wallace might violate Pitts's rights under *People* v. *Aranda* (1965) 63 Cal.2d 518 [407 P.2d 265] and *Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476 [88 S.Ct. 1620]. *Aranda-Bruton* problems were resolved and eliminated as severance grounds.

After these matters were settled, Pitts's counsel addressed conflicting defenses as a basis for severance. Pitts's counsel expressed concern counsel for Wallace might produce impeachment witnesses of which the prosecution was not aware, and a generalized concern for the difficulties of joint defendants.

While recognizing "there are cases where extraneous issues, extraneous to one but prejudicial to that one, will make it difficult for a joint trial to be fair," the court determined this was not such a case, and the burdens of joint trial with one who might testify adversely did not implicate unfairness, but in fact possibly the contrary, as a complete picture would "enable the trier of fact to reach a just result."

The trial judge specifically held that in this case, where each defendant was asserting the other was more culpable, if each of them put on his best case "the jury will have learned more about it than they otherwise would. Well, I believe that that situation is more likely to lead to truth than the other, and that the law does not compel separate trials, and that I should not compel separate trials." After the court rejected the "conflicting defenses" argument offer by Pitts's counsel, counsel for Wallace spoke to the motion for the first time. He prefaced his cursory argument by noting that "there would be no question of, I don't believe, of a reversal if Your Honor were to deny the motion for severance."[2]

The controlling authority is clear. "Because defendants were charged with having committed 'common crimes involving common events and victims' (*People* v. *Keenan* (1988) 46 Cal.3d 478, 500 [758 P.2d 1081]), this was a 'classic case' for a joint trial. Although there was some evidence before the trial court that defendants would present different and possibly conflicting defenses, a joint trial under such conditions is not necessarily unfair. (*Ibid.*) . . . ██ ██ If the fact of conflicting or antagonistic defenses *alone* required separate trials, it would negate the legislative preference for joint trials and separate trials 'would appear to be mandatory in almost every case.' [Citation.]" (*People* v. *Hardy* (1992) 2 Cal.4th 86, 168 [825 P.2d 781], italics in original.)[3] *Hardy* addresses the issue before us precisely.

Although we review actions of a trial court, and not its reasoning, the reasoning of the court here in denying severance is strongly supported in

---

[2]Trial counsel for Wallace, after decades of experience, was taking a pragmatic view. As has been pointed out, "[a]lthough several California decisions have stated that the existence of conflicting defenses may compel severance of codefendants' trials, none has found an abuse of discretion or reversed a conviction on this basis." (*People* v. *Boyde* (1988) 46 Cal.3d 212, 232 [250 Cal.Rptr. 83, 758 P.2d 25]. See also *People* v. *Pinholster* (1992) 1 Cal.4th 865, 932-934 [824 P.2d 571].) As trial counsel recognized, nothing exceptional about the facts of this case offers any reason for altering the present no-reversal appellate status of the issue.

[3]Wallace's counsel on appeal also cites us to a variety of other-state authority and federal cases to support his argument that conflicting defenses mandate granting a severance motion. *United States* v. *Crawford* (5th Cir. 1978) 581 F.2d 489, *U.S.* v. *Rucker* (11th Cir. 1990) 915 F.2d 1511 and also *U.S.* v. *Tootick* (9th Cir. 1991) 952 F.2d 1078 involved joint *convictions* after joint trial, and are thus inapposite. The vice noted in *Rucker* (915 F.2d at p. 1513) was that a jury might infer *joint* guilt, a situation not analogous to this one.

As our Supreme Court has noted, moreover, the "decisions of the lower federal courts on federal questions are merely persuasive. [Citations.]" (*Rohr Aircraft Corp.* v. *County of San Diego* (1959) 51 Cal.2d 759, 764 [336 P.2d 521]; see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 780, p. 751.) The cited cases did not address the issues before us, but interpretation of a federal procedural rule, and thus are of limited value here. Federal rules on timeliness of self-representation motions were rejected by our Supreme Court as "too rigid in circumscribing the discretion of the trial court." (*People* v. *Burton* (1989) 48 Cal.3d 843, 854 [771 P.2d 1270].) *Tootick, Rucker* and *Crawford* would not be followed for the same reason.

*Hardy.* "Each defendant presented a theory of the case that absolved himself of guilt and focussed blame on the other[]. The jury was thus presented with a straightforward choice regarding the credibility of the various defendants." (*People* v. *Hardy, supra,* 2 Cal.4th at p. 169, fn. omitted.[4]) Such a clear choice was also presented here. That the choice was adverse to Wallace's interests does not, without more, support reversal of the jury's verdicts. In these circumstances we reject Wallace's claim of error.

## II. ADMISSION OF POSTARREST STATEMENTS

█ Wallace next urges that certain statements he made while in custody should have been suppressed. At one point in custody Wallace had waived his rights against self-incrimination, but was continuing to maintain he had no involvement in a shooting. His wife then visited him, and urged him to tell the truth, and not to continue shielding his friend Pitts. Thereafter Wallace made statements indicating he was present during the shootings, but continued to deny he had been the shooter.

Wallace urges his wife was a police agent who coerced him to make admissions.[5] █ "Determinations as to the voluntariness of a statement for both the federal and state constitutional guaranties of due process of law—which is a resolution of a mixed question of law and fact that is

---

[4]In the footnote, the Supreme Court expanded upon the same theme developed below; that justice might be better served in these cases by joinder rather than severance. The *Hardy* court quoted approvingly a decision of the Supreme Court of Kentucky: " 'That different defendants alleged to have been involved in the same transaction have conflicting versions of what took place, or the extent to which they participated in it, vel non, is a reason for rather than *against* a joint trial. If one is lying, it is easier for the truth to be determined if all are required to be tried together.' (*Ware* v. *Commonwealth* (Ky. 1976) 537 S.W.2d 174, 177 [italics added], quoted in Dawson, *Joint Trials of Defendants in Criminal Cases: An Analysis of Efficiencies and Prejudices* (1979) 77 Mich.L.Rev. 1379, 1423.)" (*People* v. *Hardy, supra,* 2 Cal.4th at p. 169, fn. 19.)

In other words, while joint trial of defendants who each accuse the other does pose problems, the complaint is that too much rather than too little truth might emerge in the process. While joint defendants might prefer otherwise, this dilemma may serve the public interest in accurate ascertainment of guilt or innocence, as the trial court recognized. Such unanimity in outlook of the trial judge and our Supreme Court on the precise question before us implicates a necessary affirmance of the ruling by this intermediate court of appeal.

[5]The procedural posture of the case presents an unusual gloss on the Fifth Amendment guarantee against compulsory self-incrimination. Wallace had waived his right against self-incrimination, but was not (before his wife's visit) incriminating himself, as he denied participation in any crime. That is, Wallace was lying to the police. At trial it was made perfectly clear that the right asserted was not the right to remain silent, but the right to continue lying to the police, as Wallace claimed he would have done absent his wife's intervention. It is not at all clear that a "right to go on lying" is of constitutional dimensions absent any violation of the right to remain silent. For our purposes, however, we will assume a constitutional issue is present.

nevertheless predominantly legal—are reviewed independently." (*People* v. *Mickey* (1991) 54 Cal.3d 612, 649 [286 Cal.Rptr. 801, 818 P.2d 84].) The prosecution's burden is to prove voluntariness by a preponderance of the evidence. (*People* v. *Markham* (1989) 49 Cal.3d 63, 71 [775 P.2d 1042].)

■ The heart of this assertion of error, that the postarrest statements should have been suppressed as involuntary (that is, they were coerced) is encapsulated in the following memorable assertion: "If the police had escorted into appellant's holding cell not his wife but rather a boa constrictor, and if after a few minutes in the room with the boa constrictor appellant decided to make a statement, the subsequent statement would clearly be deemed *in*voluntary. There is no basis to distinguish Mrs. Wallace from the boa constrictor."

However colorful, the argument is made by extensive recitation of matters of fact lacking any citation whatsoever to controlling case authority. The absence of any authority directly in support of the argument indicates its invalidity. The Fifth Amendment, like the rest of the Bill of Rights, limits the conduct of government rather than individuals. If Mrs. Wallace was not acting as a government agent, her conduct regarding Wallace raises no constitutional question. Here the trial judge found as a matter of fact that Mrs. Wallace was not acting as a police agent. We accept this finding of fact. While we independently review the application of the law to these facts, in this matter the law was properly applied.

■ Moreover, it is clear that "where a person in authority makes an express or clearly implied promise of leniency or advantage for the accused which is a motivating cause of the decision to confess, the confession is involuntary and inadmissible as a matter of law. [Citation.] Mere advice or exhortation by the police that it would be better for the accused to tell the truth, when unaccompanied by either a threat or a promise, does not, however, make a subsequent confession involuntary. [Citation.]" (*People* v. *Boyde, supra*, 46 Cal.3d at p. 238.) ■ We cannot conceive how exhortation by one's wife to tell the truth, accompanied by no matter what catalog of domestic imprecations, can reasonably be construed as a cognizable violation of constitutional rights.

Wallace cites no persuasive authority in support of his proposition. *People* v. *Boyer* (1989) 48 Cal.3d 247, 273-274 [768 P.2d 610], involved a violation of rules requiring cessation of questions upon a request for an attorney by a suspect. Another case relied upon by Wallace, *Arizona* v. *Fulminante* (1991) 499 U.S. __ [113 L.Ed.2d 302, 111 S.Ct. 1246], involved the activities of "a former police officer [who] had been involved in loansharking for organized

crime but then became a paid informant for the Federal Bureau of Investigation." (*Id.* at p. __ [113 L.Ed.2d at p. 313].) This paid informant thereafter offered to protect Fulminante from other inmates, and in exchange Fulminante made a statement admitting guilt to him. (*Id.* at p. __ [113 L.Ed.2d at p. 314].) The United States Supreme Court held that though "the question is a close one, we agree with the Arizona Supreme Court's conclusion that Fulminante's confession was coerced." (*Id.* at p. __ [113 L.Ed.2d at p. 316].)

The above factual patterns have nothing whatsoever to do with the circumstances of this case. The trial judge correctly found Mrs. Wallace was not a police agent and her actions did not "produce" Wallace's statements in any event. On this appeal we accept these findings, which are fully supported by the record. (*People* v. *Mickey, supra,* 54 Cal.3d at p. 649; *People* v. *Randall* (1970) 1 Cal.3d 948, 954 [464 P.2d 114].) We thus reject Wallace's contention of error in this respect also.

### DISPOSITION

The judgment is affirmed.

Todd, Acting P. J., and Benke, J., concurred.

A petition for a rehearing was denied October 27, 1992, and appellant's petition for review by the Supreme Court was denied January 21, 1993.