UNITED STATES of America, Plaintiff,

v.

Norbert BREINIG, Defendant.

No. 93–CR–80404–01.

United States District Court,
E.D. Michigan, S.D.

Feb. 2, 1994.

Richard Lustig, Birmingham, MI, for plaintiff.

Karen L. Reynolds, Asst. U.S. Atty., Detroit, MI, for defendant.

## OPINION

FEIKENS, District Judge.

On November 19, 1993, a jury in the Eastern District of Michigan returned a verdict of guilty against Norbert Breinig on two counts of wilfully attempting to evade and defeat his federal income taxes for the years 1986 and 1987 in violation of 26 U.S.C. § 7201. Before me now is defendant Breinig's motion for a new trial. For the reasons stated below, that motion is denied.

### I. *Background*

On April 8, 1993, a grand jury in the Eastern District of Michigan handed down an indictment charging that defendants Norbert Breinig and his former wife Joan S. Moore wilfully attempted to evade and defeat their federal income taxes for the tax years 1986 and 1987 in violation of 26 U.S.C. § 7201. The indictment alleged that the defendants underreported income that they had earned from their family-run lawn mowing and snow plowing business, Country Lane Snow and Mow. I decided to try the defendants together under Rule 8(b) of the Federal Rules of Criminal Procedure. Both defendants opposed this decision and moved for separate trials under Rule 14. I denied those motions. The defendants pleaded not guilty, and the case went to trial on November 8, 1993. On November 19, 1993, the jury returned a verdict of guilty on both counts as to Norbert Breinig but acquitted his co-defendant Joan Moore. Defendant Breinig now moves for a new trial, arguing that my decision to deny severance was error.

The thrust of Breinig's trial defense was that for the years in question he had no control over the bookkeeping of Country Lane Snow and Mow and therefore could not have wilfully evaded his income taxes. He testified at trial that his job in the family company was to oversee the business's lawn mowing and snow plowing operations while his ex-wife, Joan Moore, did all the bookkeeping. Moore also testified at trial and admitted both that she was the bookkeeper and that the Breinigs had underreported their income. Her defense was that her psychological condition left her unable to exert the free will necessary to meet the statute's wilfulness requirement. Breinig argues that his trial defense and that of his former wife were inherently antagonistic and, accordingly, that my decision to deny separate trials was error. His argument is that standing trial with Moore essentially left him to defend against two prosecutors and that this violated his Fifth Amendment right to due process of law.

### II. *Analysis*

The U.S. Supreme Court recently addressed the issues of severance and "mutually antagonistic defenses" in *Zafiro v. United States,* —— U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). The defendants in *Zafiro* requested that the Court establish a per se rule prohibiting mutually antagonistic defenses. The Court rejected this request and proceeded to offer some guidance as to when severance is proper:

[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a *specific trial right* of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissi-

ble if a defendant were tried alone is admitted against a codefendant.... The risk of prejudice will vary with the facts in each case....

*Id.* (emphasis added).

█ Defendants moving for severance bear a "heavy burden" to show "substantial prejudice." *United States v. Moore,* 917 F.2d 215, 221 (6th Cir.1990), *cert. denied,* 499 U.S. 963, 111 S.Ct. 1590, 113 L.Ed.2d 654 (1991); *United States v. Benton,* 852 F.2d 1456, 1469 (6th Cir.) (noting that to prevail, the moving defendants "must demonstrate the jury's inability to distinguish evidence relevant to each defendant"), *cert. denied,* 488 U.S. 993, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988); *United States v. Gallo,* 763 F.2d 1504, 1526 (6th Cir.1985) (same), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986); *United States v. Davis,* 707 F.2d 880, 883 (6th Cir.1983) (same). Further, "[w]hen the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but ... less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro,* —— U.S. at ——, 113 S.Ct. at 938.

Breinig claims that my decision not to grant a severance prejudiced his case in three ways. First, he alleges error because he was tried with a former wife on "a mission to destroy her former husband and ensure his conviction." Second, he claims he was prejudiced by the testimony of Moore's psychiatrist and her psychologist that Moore was easily manipulated, had suicidal tendencies, and was easily dominated. Breinig maintains that this sort of testimony would not have been admissible had Breinig gone to trial alone. Finally, Breinig claims he was prejudiced by Moore's statements to her neighbors admitting unreported income. He argues that those statements were admitted against Moore and might not have admissible against him had he been tried alone.

### 1. *Whether Joan Moore's antagonism warranted severance*

Breinig's attorney maintained during oral argument that my decision to try Breinig and

Moore together impermissibly alleviated the government of its burden to prove guilt beyond a reasonable doubt. He explained that trying the defendants together unfairly forced the jury either to believe Breinig's story or to believe the story told by his former wife, and that severance accordingly was mandated under *United States v. Rucker,* 915 F.2d 1511, 1513 (11th Cir.1990) (granting severance because "[n]o reasonable juror could believe *both* of their stories"). This argument is similar to the one raised in *Zafiro:*

> [The] theory is that when two defendants both claim they are innocent and each accuses the other of the crime, a jury will conclude (1) that both defendants are lying and convict both of them on that basis, or (2) that at least one or two must be guilty without regard to whether the Government has proved its case beyond a reasonable doubt.

*Zafiro,* —— U.S. at ——, 113 S.Ct. at 938.

█ I acknowledge that standing trial with his ex-wife might have made Breinig's defense more difficult. But as the Court in *Zafiro* noted, "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id.* In addition, I find no merit in the argument that the jury must have concluded that "one or two [of the defendants] must be guilty without regard to whether the Government has proved its case beyond a reasonable doubt." *Zafiro,* —— U.S. at ——, 113 S.Ct. at 938. That theory simply does not reflect the testimony presented in this case. The jury heard expert testimony that Joan Moore would do anything for approval and to protect her way of life. She was capable of underreporting the family's income because it was what she *thought* her husband would want and because she enjoyed their lifestyle. The expert testimony presented, if believed, could have led to the jury's acquittal of Moore either because it determined that her mental condition negated the required mens rea or because it felt sorry for her.[1] At the

---

**1.** It seems that any unfair prejudice in this case was to the government's case against Moore.

Although the psychological testimony supported Moore's claim that she was unable to form the

same time, the jury could have acquitted Breinig, reasoning that he was unaware of Moore's activities. This verdict would have been entirely consistent with the testimony that the jury heard at trial.

### 2. *The Psychological Testimony*

I have no doubt that testimony tending to show that Moore was easily manipulated made the government's burden easier. The testimony, if believed, made it more reasonable to infer that Breinig could have participated in or instigated the underreporting of income—despite his claim that Moore did most of the bookkeeping.[2] Still, inferences that Moore was likely to follow Breinig's commands do not unfairly prejudice Breinig; it just made it more likely that he was guilty of the crime charged. As noted above, severance is not required merely because a separate trial might have increased Breinig's chances of acquittal. *Zafiro*, —— U.S. at ——, 113 S.Ct. at 938. That the evidence was prejudicial is not enough; Breinig must show that the prejudice was unfair.

This, he did not do. I carefully limited the scope of the psychological and psychiatric testimony that Moore introduced into this trial. As noted above, Moore's defense was that her psychological make-up rendered her unable to form the wilfulness element required by the statute. I went to great lengths to prohibit testimony showing that Moore *in fact* was psychologically dependent on her husband. Further, I did not permit any psychological or psychiatric evidence tending to show that Breinig had somehow contributed to Moore's psychological condition. For the most part, Moore's experts bolstered their testimony with details from Moore's childhood but refrained from mentioning or eliciting any recent incidents arguably prejudicial to Breinig.

### 3. *Moore's Statements To Her Neighbor*

One of the Breinigs' former neighbors testified that Moore had admitted to her that the family had underreported its income. Breinig argues that the testimony might not have been admitted had the two defendants been tried separately.

That the evidence *might* not have been admitted had Breinig been tried alone is not at issue here. As *Zafiro* noted, "a fair trial does not include the right to exclude relevant and competent evidence." *Id.*[3]

Further, the neighbor's statement simply did not seriously prejudice Breinig's case. Neither of the defendants seriously contested the government's claim that they had underreported their income. Breinig, for example, merely maintained that he was unaware of the underreporting. Moore, on the other hand, actually admitted that she knowingly underreported the couple's income. The neighbor's testimony at most mirrored Joan Moore's own trial testimony. Any prejudice to Breinig's case was insignificant.

For the foregoing reasons, IT IS ORDERED that defendant Norbert Breinig's motion for a new trial IS, and it is hereby, DENIED.

---

required mens rea, for the most part Moore's defense tended to paint her as a person who had suffered enough.

2. There was plenty of evidence at trial refuting Breinig's claim that Moore did all of the couple's bookkeeping. Testimony from neighbors and handwriting experts established clearly that Breinig participated actively in the tax preparation process.

3. It is worth noting that the neighbor's testimony might have been admissible against Breinig were he tried alone. Joan Moore testified in her defense and admitted that the family had underreported its income. Breinig can not seriously maintain that *her* testimony could have been excluded in separate trials. *See Zafiro*, —— U.S. at ——, 113 S.Ct. at 938. The neighbor's testimony accordingly would have been relevant and might have been admissible in the separate trial, for example, to rebut the implied charge that Moore fabricated her testimony as part of a hypothetical plea bargain or as part of her alleged "mission to destroy her former husband and ensure his conviction." Fed.R.Evid. 801(d)(1). But the ability to construct hypothetical ways of introducing this evidence at trial is not the issue here. The evidence was relevant and competent. Breinig had no right to have it excluded.