UNITED STATES of America, Plaintiff,

v.

Ryan BODIE, Leroy Bodie and Terrance Ward, Defendants.

96–780–CR–GOLD.

United States District Court,
S.D. Florida.

Nov. 3, 1997.

Christopher Pace, Asst. U.S. Atty., Miami, FL, for Plaintiff U.S.

Richard Joseph Lautenbach, Miami, FL, for Defendant Ryan Bodie.

Bonnie B. Phillips, Asst. Federal Public Defender, Miami, FL, for Defendant Leroy Bodie.

Richard Docobo, Miami, FL, for Defendant Terrance Ward.

## MEMORANDUM RULING

GOLD, District judge.

This CAUSE came before the Court upon defendant Leroy Bodie's "Motion for Rule 14 Severance" and "Supplement Motion for Severance," defendant Terrance Ward's "Motion for Severance," "Motion to Adopt Ryan Bodie's Renewed Motion for Severance Pursuant to Rule 14," and "Objections to Magistrate Judge' Report and Recommendation Concerning Ward's Motion for Severance," and defendant Ryan Bodie's "Renewed Motion for Severance Pursuant to Rule 14." For the below-stated reasons, the Court concludes that defendants were joined properly under Federal Rules of Criminal Procedure Rule 8(b), and that severance of any one of the defendants pursuant to Fed.R.Crim.P. Rule 14 is not warranted.[1]

### I. Findings of Fact

The government contends that evidence elicited at trial will demonstrate the following. Prior to the evening of August 25, 1997, Ryan Bodie ("Ryan"), brother of Leroy Bodie ("Leroy") approached Luis Andujar ("Andujar") to purchase a half kilogram of cocaine. Andujar told Ryan that he could only produce a quarter-kilogram of cocaine, not the full half kilogram. Not satisfied with this, Ryan notified Andujar that he would look for another source. Ryan reconsidered, however, and told Andujar that he would purchase whatever quantity of cocaine that Andujar could provide. The two agreed to meet in the evening of August 25, 1996, at 15470 S.W. 289 Terrace, Miami, Florida, which is the residence of a member of the Andujar family ("Andujar residence").

In the evening of August 25, 1996, Ryan, Terrance Ward ("Ward") and a third individual met Andujar at the Andujar residence. After Ryan and Ward inspected the quarter-kilogram of cocaine, and Andujar had seen the money to purchase the cocaine, Ryan, Ward and this third individual left the Andujar residence purportedly to obtain a scale to weigh Andujar's cocaine. Upon returning, Ward shot Andujar, and all three left the Andujar residence with Andujar bleeding on the floor from the gun shot wound.[2]

In response to a "911" call from Andujar, police officers arrived at the Andujar residence to assist Andujar and investigate the shooting. Andujar identified his assailants as Ryan and "T.T.," later revealed to be a nickname for Ward. The police searched the Andujar residence and discovered narcotics paraphernalia. The quarter-kilogram of cocaine, however, was not found.

Several officers then went in search of Ryan at the house of the defendants' mother Bettie Bodie. Leroy and Ms. Bodie were at home and informed the Metro Dade police that Ryan was not home. The next day, while conducting surveillance of Ryan's residence, an officer saw Leroy drive from his home in a Ford Explorer with a second man, who the officer believed to be Ryan, in the passenger's seat. Other officers were dispatched to follow the Ford Explorer and eventually pulled over the Explorer and arrested Ryan immediately.[3] Leroy consented to a search of the vehicle and the police discovered a package which they believed contained cocaine. The Brodie bothers were brought to the station. Leroy waived his Miranda rights and told the police that he had a gun at the Bodie home. The police then escorted Leroy to the Bodie home, and Leroy showed the officers the location of his weapon, a .45 caliber pistol. After obtaining consent from Bodies' mother,[4] the officers searched the house and discovered a second

---

1. This Ruling supplements U.S. Magistrate Stephen T. Brown's Order, dated October 10, 1997.

2. Ward maintains that he did not shoot Andujar, was not even at the scene of the shooting and "was merely a witness to events which transpired after the alleged crime took place."

3. Defendants contend that the police stopped Leroy on his way to taking his brother Ryan to the police station.

4. The question of whether Ms. Bodie gave proper consent to search her home is before the Court upon defendant's pending motion to suppress. United States Magistrate Stephen T. Brown found that the police did not obtain Ms. Bodie's

weapon, an M–1 carbine and magazines for the carbine.

On September 26, 1996, the United States filed an indictment against both Leroy and Ryan, charging Leroy with conspiracy to possess cocaine with intent to distribute, possession of cocain with intent to distribute and being a felon in possession of a firearm, and Ryan with conspiracy to possess cocaine with intent to distribute and being a felon in possession of a firearm.

On July 2, 1996, the United States filed a superceding indictment against Ryan, Leroy and Ward, charging Leroy with conspiracy to possess cocaine with intent to distribute (Count I), possession of cocaine with intent to distribute (Count III), possession of a firearm by a felon (Count VI), and Ryan with conspiracy to possess cocaine with intent to distribute (Count I), two counts of possession of cocaine with intent to distribute (Count II and III), using and carrying of a firearm during a felony (Count IV), and being a felon in possession of a firearm (Count V). Finally, the United States charged Ward with conspiracy to possess cocaine with intent to distribute (Count I), possession of cocaine with intent to distribute (Count II), using and carrying of firearm during a felony (Count IV), and being a felon in possession of a firearm (Count VII).

## II. Legal Analysis

### A. Joinder

■ Rule 8(b) states that "two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."[5] Fed.R.Crim.P. 8(b). In examining a Rule 8(b) challenge to joinder, a district court must determine through examination of the face of the complaint whether joinder was appropriate. *United States v. Morales*, 868 F.2d 1562, 1568–69 (11th Cir.1989). "Joinder of multiple defendants is proper whenever there is a 'common thread' between the actions charged against them." *United States v. Saget*, 991 F.2d 702, 707 (11th Cir.1993). "Rule 8(b) ... makes clear that joinder of the defendants for trial is proper where the indictment charges multiple defendants with a single conspiracy and also charges some of the defendants with substantive counts arising out of the conspiracy." *United States v. Simon*, 839 F.2d 1461, 1472 (11th Cir.1988); accord *United States v. Alvarez*, 755 F.2d 830, 857 (11th Cir.1985).

■ Guided by these principles and after examination of the superceding indictment, the Court concludes that joinder was proper in the case at bar. The superceding indictment charges all three defendants with conspiracy to possess with intent to distribute cocaine. The "common thread" linking the defendants is this alleged conspiracy.[6] *Morales*, 868 F.2d at 1568–69. Having concluded that joinder of the defendants here is proper, it is now incumbent upon the Court to determine whether a joint trial is permissible under the principles of Fed.R.Crim.P. Rule 14.

### B. Standard for Severance

■ Rule 14 provides that "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the

---

consent, but such was given under duress. This issue does not affect the disposition of this motion.

5. "A Rule 8(b) claim questions the propriety of joining two or more defendants in a single indictment in the first instance. In contrast, a Rule 14 claim assumes that the initial joinder of the defendants was proper but challenges their joint trial as unduly prejudicial." *United States v. Morales*, 868 F.2d 1562, 1568 (11th Cir.1989).

6. It should also be noted that the Honorable Joan A. Leonard of this Court, in examining Leroy's motion to sever prior to the filing of the superceding indictment, denied that motion and held that joinder of Leroy and Ryan's claims was proper.

court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." Fed.R.Crim.P. 14. The general rule in conspiracy cases like this one is that "persons who are charged together should be tried together." *United States v. Adams,* 1 F.3d 1566, 1578 (11th Cir.1993) (quoting *Saget,* 991 F.2d at 707); *Morales,* 868 F.2d at 1571. The preference for a joint trial of multiple defendants in conspiracy cases reflects the sound policy of joinder where charges may be proven with substantially the same evidence. *United States v. Dorsey,* 819 F.2d 1055, 1058 (11th Cir.1987). The district courts are called to balance the public's interest in judicial economy and efficiency with any prejudice that the defendant may suffer from a joint trial. *United States v. Cross,* 928 F.2d 1030, 1037 (11th Cir.1991); *Dorsey,* 819 F.2d at 1058.

■■■ Although joinder is proper under Rule 8(b), a district court may order Rule 14 severance under two circumstances, when (1) there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or (2) a joint trial would prevent the jury from making a reliable judgment about guilt or innocence. *Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993); *United States v. Talley,* 108 F.3d 277, 279–280 (11th Cir.1997). "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro,* 506 U.S. at 538–539, 113 S.Ct. at 938. Severance is appropriate, therefore, when a defendant demonstrates that he or she suffered a "substantial" or "compelling" prejudice to his or her right to a fair trial. *Zafiro,* 506 U.S. at 540, 113 S.Ct. at 938; *Saget,* 991 F.2d at 707; *Dorsey,* 819 F.2d at 1058.

"Compelling prejudice is demonstrated by a showing that the jury was unable to make an individualized determination as to each defendant." *Saget,* 991 F.2d at 707. Limiting instructions, however, "often will suffice to cure any risk of prejudice." *Zafiro,* 506 U.S. at 539, 113 S.Ct. at 938; *Talley,* 108 F.3d at 280.

### 1. Antagonistic Defenses

■■■ Defendants Ryan and Ward contend that severance is required here because each defendant intends to rely at trial on mutually antagonistic defenses. *Smith v. Kelso,* 863 F.2d 1564, 1571 (11th Cir.1989).[7] Ward asserts that he intends to implicate Ryan and Leroy in his defense, and Ward reasonably anticipates that Ryan and Leroy will accuse Ward of shooting Andujar. Ward argues, therefore, that the jury will be forced to choose between convicting Ward, or the other two defendants, guaranteeing that at least one defendant will be convicted, even prior to hearing the first piece of evidence at trial.[8] In light of the recent Supreme Court decision in *Zafiro* and Eleventh Circuit decision in *Talley,* Ward's argument is without merit.

In *Zafiro,* the defendants, like Ward and Ryan here, argued that by asserting mutually antagonistic defenses, the jury would conclude either "(1) that both defendants [were] lying and convict them both on that basis, or (2) that at least one of the two must be guilty without regard to whether the Government had proved its case beyond a reasonable doubt." *Zafiro,* 506 U.S. at 540, 113 S.Ct. at 938. *Zafiro* rejected defendants' arguments reasoning that "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id.* The Court further held that any prejudice resulting from the mutually antagonistic defenses could be cured with proper instruc-

---

**7.** It should be noted that the Eleventh Circuit recently ruled that *United States v. Rucker,* 915 F.2d 1511 (11th Cir.1990), holding that mutually antagonistic defenses compelled severance, was "undercut severely" by *Zafiro, supra. Talley,* 108 F.3d at 279. Accordingly, this Court declines to follow *Kelso* to the extent that it stands for the same principle.

**8.** Similarly, Ryan contends that Leroy and Ryan will both argue that the drugs at issue here belonged to the other, and therefore, the jury will be placed in the position of having to convict either Leroy or Ryan on the drug possession with intent to distribute charge.

tions to the jury.[9] The Court also found that defendants had not suffered such prejudice, because the government had met its burden in proving each defendant's guilt beyond a reasonable doubt. *Id.* at 540, 113 S.Ct. at 939; *Talley,* 108 F.3d at 280–82 (holding that defendants could not rely on defense of mutually antagonistic defenses in light of *Zafiro* because the government had met its burden of proof); *see also United States v. Linn,* 31 F.3d 987, 992 (10th Cir.1994) (holding that mutual antagonism of defendants' defenses did not require severance, because jury could have believed all the defendants' theories and acquitted them all).

This Court concludes that *Zafiro* and *Talley* are dispositive here. Accordingly, the Court must reject defendant Ward and Ryan's contentions that their mutually antagonistic defenses will prejudice the defendants here to a substantial or compelling degree. Although the Court is without the benefit of examining the strength of the government's case at trial against each defendant, the Court concludes that proper curative instructions will "cure any possibility of prejudice," *Id.* 506 U.S. at 541, 113 S.Ct. at 939, and ensure that the defendants receive consideration of their respective cases on an individualized basis.

### 2. Prejudicial Spillover

Defendant Leroy also contends that a joint trial will cause substantial prejudice to his right to a fair trial, although he predicates his motion on grounds other than the assertion of mutually antagonistic defenses. Leroy argues that the evidence relating to the shooting of Andujar, of which Leroy is not charged, will likely result in prejudicial spillover and undue jury confusion to his detri-

ment. More specifically, Leroy argues that there is no evidence linking him to the events of August 25, 1996,[10] and even were such evidence to exist, once the jury sees Andujar, who is paralyzed, there is a serious risk that the jur's ability to apply the evidence separately to each defendant will be compromised.

▪ Leroy has not identified any specific "trial right" at issue here. *Zafiro,* 506 U.S. at 540, 113 S.Ct. at 938. The ultimate issue, therefore, is whether the spillover prejudice from the events of August 25, 1997, will prevent the jury from "individualiz[ing] each defendant in relation to mass." *United States v. Watchmaker,* 761 F.2d 1459, 1476 (11th Cir.1985). In evaluating this issue, the Court is mindful of the general rule, especially relevant in conspiracy cases, that those jointly indicted should be tried together. *Adams,* 1 F.3d at 1578; *Saget,* 991 F.2d at 707; *Morales,* 868 F.2d at 1571. "This is a heavy burden, and one which mere conclusory allegations cannot carry." *United States v. Hogan,* 986 F.2d 1364, 1375 (11th Cir. 1993).

▪ Leroy fails to meet this heavy burden. As a threshold matter, the Court notes that Leroy's absence from the crime scene on August 25, 1996, is not sufficient to disengage him from the conspiracy charged, that of acquiring one-half kilogram of cocaine. *United States v. Plotke,* 725 F.2d 1303, 1306 (11th Cir.1984); *United States v. Johnson,* 700 F.2d 699, 700 (11th Cir.1983) (holding that a conspirator need not participate in every act of the conspiracy to be responsible for those acts). In addition, far from distancing Leroy from the conspiracy, the recovery of one-half kilogram of cocaine from

**9.** "The District Court properly instructed the jury that the Government had 'the burden of proving beyond a reasonable doubt' that each defendant committed the crimes with which he or she was charged. The Court then instructed the jury that it must 'give separate consideration to each individual defendant and to each separate charge against him. Each defendant is entitled to have his or her case determined from his or her own conduct and from the evidence [that] may be applicable to him or to her.' In addition, the

District Court admonished the jury that opening and closing arguments are not evidence and that it should draw no inference from a defendant's exercise of the right to silence." *Zafiro,* 506 U.S. at 540–41, 113 S.Ct. at 939.

**10.** In support of this contention, Leroy points out that the Bodie brothers were in possession of double the amount of cocaine allegedly stolen by Ryan and Ward from Andujar the previous day.

Leroy's Ford Explorer demonstrates that the conspirators succeeded in obtaining the amount originally sought from Ward.

The Court concludes that Lyon's second argument is equally without merit. Leroy contends that the prejudicial spillover from the evidence related to the August 25 events will cause the jury to convict without evaluating the merits of each individual defendant's case. This Court, however, intends to issue jury instructions cautioning the jury to evaluate the evidence as to each defendant individually. The Court is confident that the jury will be able to separate the evidence as it applies to each defendant with the help of curative instructions from the Court. *Zafiro*, 506 U.S. at 540, 113 S.Ct. at 939, 122 L.Ed.2d 317 ("Juries are presumed to follow their instructions") (citation omitted); *U.S. v. Kopituk*, 690 F.2d 1289, 1320 (11th Cir.1989) (holding that a curative instruction is the "most efficacious tool to protect against" the danger of spillover).[11]

### 3. Bruton Issues and Redaction

Defendants Ryan and Ward next argue that each defendant is entitled to severance on the basis of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Ward asserts that codefendant Ryan's post-arrest statements implicate Ward in the shooting of Andujar and therefore are violative of Ward's Six Amendment right to confrontation. Ryan argues the same with regard to Leroy's statement to Detective Ward, "but the crack in the trunk is my brother Ryan's." The government argues in response that redaction of these statements addresses any Sixth Amendment

*Bruton* concerns raised by Leroy and Ryan's statements.

In *Bruton*, the Court held that "a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a non-testifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 208, 107 S.Ct. 1702, 1706–07, 95 L.Ed.2d 176 (1987). The Supreme Court in *Marsh* further refined its holding in *Bruton*, concluding that when a statement is "not incriminating on its face," but becomes "so only when linked with evidence introduced later at trial," the statement need not be excluded provided it is "redacted to eliminate not only the defendant's name, but any reference to his or her existence," and the jury is given a proper limiting instruction. *United States v. Foree*, 43 F.3d 1572, 1578–79 (11th Cir.1995) (quoting *Marsh*, 481 U.S. at 211, 107 S.Ct. at 1707–08). The *Marsh* Court specifically left open the question of the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun. *Id.* (citing *Marsh*, 481 U.S. at 211 n. 5, 107 S.Ct. at 1709 n. 5.) This is precisely the question which this Court addresses today in examining Leroy and Ryan's statements.[12]

The Eleventh Circuit, addressing the question left open in *Marsh*, held that admission of a co-defendant's statement, which makes no reference to the defendant's name but still discusses his existence, is not violative of *Bruton* unless "the jury would logically conclude from the other evidence in the record that the neutral pronoun or gen-

---

11. The Court noted that even were this Court to grant Leroy's Rule 14 severance, Andular's testimony and the evidence regarding the August 25, 1996, shooting may still be admissible to demonstrate the source of the cocaine, the goal of the conspiracy and the circumstances of Leroy's arrest. *See United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir.1985) ("Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and the set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of

an account of the crime, or is necessary to complete the story of the crime for the jury").

12. The government redacted Leroy's statement to read, "the crack in the truck is someone else's." The second statement at issue here is Ryan's statement implicating Ward in the shooting of Andujar. The government similarly redacted this statement to eliminate all references to Ward by excising part of the statement entirely, and in other relevant sections, substituting a general word or neutral pronoun for Ward's name.

eral word indeed represented the defendant." *Foree*, 43 F.3d at 1578 (quoting *United States v. Mendoza–Cecelia*, 963 F.2d 1467, 1481 (11th Cir.1993)). Concluding that the admission of the redacted statement a tissue was not violative of *Bruton*, the Eleventh Circuit commented as follows in *United States v. Vasquez*, 874 F.2d 1515, 1518 (11th Cir.1989):

> "[T]he jury was not compelled to conclude that *Vasquez* was the individual referred to in [the codefendant's] confession. There was no evidence before the jury suggesting that Vasquez was the only source from which [the codefendant] obtained his counterfeit money ... In short, there was nothing in the confession itself *or the record as a whole* that would have directly linked Vasquez in the minds of the jury as the 'individual' referred to in [the] confession."

*United States v. Van Hemelryck*, 945 F.2d 1493, 1502 (11th Cir.1991) (quoting *Vasquez*, 874 F.2d at 1518) (emphasis added). A confession, therefore, remains inculpatory, even where redacted, if the jury would logically conclude from the other evidence in the record that the neutral pronoun or general word represented the codefendant.[13] *Mendoza–Cecelia*, 963 F.2d at 1481; *Van Hemelryck*, 945 F.2d at 1502; *United States v. Petit*, 841 F.2d 1546, 1556 (11th Cir.1988).

■ The issue in the case at bar is whether Leroy and Ryan's edited statements, in light of the record taken as a whole, will lead the jury to conclude that the general or neutral words represent Ryan and Ward respectively. At trial, the government expects to elicit evidence showing that Ryan

attempted to purchase one-half kilogram of crack cocaine on August 25, 1996, the day before being pulled over with one half kilogram of cocaine in the back seat of Leroy's Ford Explorer. The government further anticipates that it will elicit evidence which implicates Ward in the shooting of Andujar. The Court, therefore, recognizes that the statements at issue, without proper precautions, could present a *Bruton* issue. Accordingly, this Court reserves ruling on whether the government will be allowed to admit these statements until such time that the Court can evaluate the statements in light of the evidence admitted at trail. In line with this directive, the Court will not permit the government to mention these statements in its opening statement. The government is further cautioned not to attempt to offer these statements into evidence in its case in chief until the Court affirmatively rules on their admissibility.[14]

### 4. Bifurcation of Counts V, VI and VII

■ Having concluded that severance of the defendants is inappropriate here, the Court, nevertheless, must review the effect of the prejudice which will result when evidence of each defendant's criminal record is introduced in order to prove the Section 922(g) charges, felon in possession of a firearm.[15] Although the Eleventh Circuit has not considered this issue, at least one other Circuit has adopted a bifurcated trial procedure to address these concerns. *United States v. Joshua*, 976 F.2d 844, 848 (3rd Cir.1992). Under this procedure, the district court bifurcates the trial into two phases. In the first phase, the jury determines the guilt or innocence of the defendants on all charges before the Court, except the Section 922(g) charges. After the jury renders its decision

---

13. In *United States v. Bennett*, 848 F.2d 1134 (11th Cir.1988), the Court found upon examination of the redacted statement in light of the whole record, that the district court had committed a *Bruton* error. The Court also found the following factors significant, aside from the inculpatory evidence in the record: (1) the district court's failure to give a limiting instruction to the jury, and (2) the prosecutor's references to the statement in both opening and closing arguments.

14. Defendant Ward further contends that Ryan or the government will elicit testimony from a

friend of Ryan's Charity Johnson. Ward reasonably anticipates Ms. Johnson will testify to statements made by Ryan to her which implicate Ward. Ward argues that her testimony, therefore, presents the Court with a *Bruton* issue. The Court will also reserve judgment on the admissibility of this testimony until trial. The government is subject to the same restrictions with regard to Ms. Johnson's testimony as to Leroy and Ryan's post-arrest statements.

15. In Counts, V, VI and VII, defendants are each charged with possession of a weapon by a felon.

at the conclusion of the first phase, the government presents its case as to the remaining weapon possession charges, and the same jury then has an opportunity to deliberate on those counts. *Id.* The Court concludes that this approach strikes an even balance between prejudice suffered by the defendants and the considerations of judicial economy. *Id.*

Applying these principles to the case at bar, the Court will permit the government to offer evidence of the defendants' use and carrying charges in Counts V, VI or VII, other than in relation to the possession of the firearms, until the jury has concluded its deliberations regarding Counts I–IV. The government additionally shall redact all portions of the indictment consistent with the above-stated principles.

Accordingly, it is

**ORDERED and ADJUDGED** that defendant Terrance Ward's Motion to Server [DE–156] is DENIED. It is further

**ORDERED and ADJUDGED** that defendant Leroy Bodie's Motion to Sever [DE–143] is DENIED. It is further

**ORDERED and ADJUDGED** that defendant Ryan Bodie's Renewed Motion to Sever is DENIED.